(Decided June 19th, 1877.)

---

THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY *vs.* THOMAS LARKIN.

### DAMAGES.

*Liability of railroad companies—Compensatory Damages—Punitive Damages—Duty of conductors on railway trains in ejecting passengers—No more force to be used than necessary—Prayers and instructions.*

That the jury may be allowed to give exemplary or punitive damages against a railroad company, in an action by a passenger for illegal and violent expulsion from their train, is no longer an open question in this State.

The jury may not only award to the plaintiff such sum as damages as will *compensate* him for the injury to his person, feelings and character, arising from the unlawful act of the defendant, but if they believe the unlawful act was deliberately and forcibly done, then they may give such *exemplary damages* as they may consider a proper *punishment* for the defendant.

In ascertaining the extent of the injury, the jury may consider all the facts which relate to the wrongful act of the defendant and its consequences to

the plaintiff; but they are not at liberty to go further, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

In that case the jury are authorized for the sake of public example to give such additional damages as the circumstances require; the tort is aggravated by the evil motive, and on this rests the rule of exemplary damages

Though the plaintiff may in the first instance render himself liable to be ejected from the cars on account of his disorderly conduct, still in accomplishing his removal, it is the plain duty of the company to use no more force than absolutely necessary; and if unnecessary force and violence be used to the injury of the plaintiff, the company is liable to an action for damages.

An excessive battery is a complete answer to a plea of *son assault demesne*, and if wantonly and maliciously inflicted, subjects the party making it to the same liability to exemplary damages as if he had been the original wrongdoer.

No objection can be taken in the Court of Appeals to an instruction of the Court below, where it does not appear by the record, that such objection was taken in the Court below.

Though an instruction of the Court is not so explicit and free from fault as it might be, yet, if when taken in connection with the evidence on which it is based, and the other instructions of the Court, it is found to present the question at issue fairly to the jury, the judgment will not be reversed on account of such defective instruction.

APPEAL from the Court of Common Pleas of Baltimore City.

In this case Thomas Larkin brought an action in the Court of Common Pleas of Baltimore City, against the Philadelphia, Wilmington and Baltimore Railroad Company, alleging in the declaration that he had been expelled from defendant's cars by its agents, illegally and with circumstances of gross and wanton outrage. It was proved that on the 20th November, 1875, the plaintiff bought a ticket over defendant's road from Philadelphia to Baltimore and had his baggage checked to the latter place: that he took his seat, shortly before the train left, in the second car from the rear: that he was suffering from

fatigue and loss of sleep, having arrived at Philadelphia late the night before, after a rough and stormy passage of eight days from Boston, during which he had been up nearly all the time and for forty-eight consecutive hours had been without rest: that he soon fell asleep, but easily awoke when the conductor came around to collect tickets: that he showed his ticket, but soon fell asleep again: that the conductor came round again to collect tickets: up to this point there was no conflict of testimony, but as to what then occurred, the cause of plaintiff's expulsion from the train and the force used in effecting it, the testimony of plaintiff and defendant is directly contradictory. The evidence as offered on each side will appear from the prayers offered, which were as follows:

Plaintiff's prayers:

1st. If the jury find from the evidence that the plaintiff paid the defendant the fare required to travel on defendant's cars from Philadelphia to Baltimore, and received a ticket as evidence thereof; that the plaintiff, upon the conductor's demand, while so travelling, exhibited said ticket to him, and when called upon again to do so, was unable at the time to find it, and so informed the conductor, then they are instructed that while it was the duty of the plaintiff to present his ticket to the conductor when demanded, it was equally the duty of the conductor to make his demand with becoming courtesy and demeanor, and to allow plaintiff every reasonable opportunity to comply with it; and if they shall believe from the evidence that had the conductor so acted, plaintiff's ticket would have been produced, then plaintiff could not legally be expelled from the car, because of the non-production of his ticket under such circumstances, and the verdict in this case must be for the plaintiff, unless the jury shall further find that the plaintiff acted in a disorderly manner to the annoyance of the passengers.

2nd. If the jury find that defendant's agents expelled plaintiff from its cars with unnecessary force and violence, then their verdict must be for the plaintiff.

3rd. If the jury find for the plaintiff, then they should award him such damages as will, under all the circumstances of the case, compensate him for the injury to his person and feelings, suffered by reason of the unlawful acts of the defendant; and if they find that plaintiff was treated with unnecessary and reckless violence and indignity, then they may award such further damages as they may think proper to punish such conduct and deter the defendant from like conduct in the future.

4th. Even if the jury shall believe from the evidence that the plaintiff acted in a disorderly manner, and persisted in such disorderly conduct to the annoyance of the passengers, or refused to show his ticket on the demand of the conductor, and that then it became necessary under the rules and regulations of the company, for the conductor to eject him from the cars, and that he was so ejected, still if they further find from the evidence that unnecessary force was used in such expulsion, then their verdict must be for the plaintiff; and in estimating the damages they may allow the plaintiff such sum of money as in their judgment will compensate him for the wounds and injuries inflicted upon him by the use of such unnecessary force, (if they shall find such wounds and injuries,) as well as for the mortification and indignity placed upon him, should they find any such; and if they shall further find that there was such unnecessary forcible expulsion, and that defendant's employés acted in a wanton, high-handed and outrageous manner, then they may allow the plaintiff such *further sum* of money as in their judgment may be a proper *punishment* of the defendant.

Defendant's prayers :

1st. That if the jury shall find from the evidence that the plaintiff purchased a ticket from the defendant's agent

at Philadelphia to travel to Baltimore, on the express train that left Philadelphia at 12.15 o'clock, P. M., on the 20th of November, 1875, and that he took his seat in one of the cars of said train, and that by the regulations and instructions of the said defendant, it was the duty of the conductor of said train to collect the tickets of passengers after passing the City of Wilmington, and if any passenger would not give his ticket or pay his fare, to put him off; and that the conductor in the performance of his duty was passing through said train for the purpose of so collecting the tickets when he came to the plaintiff, who was lying asleep on his seat ; and that the said conductor then aroused the plaintiff and demanded his ticket, but that the plaintiff then insisted that the conductor had said ticket ; that the said conductor, after collecting the tickets of other passengers near, in a few minutes returned to the plaintiff and again demanded his ticket, and told him he would be put off if he did not deliver it, but the plaintiff again insisted, in offensive terms, that the conductor had the ticket ; that after searching on his own person the plaintiff found the ticket, but with violent, profane and indecent language declared that he would not give it up, and defied the said conductor, or any other man, to take it ; that the conduct and language of the defendant in so doing was so violent and improper as to alarm ladies in the car, and to produce a remonstrance from gentlemen in the car, who asked conductor to put the plaintiff off the train, threatening to report him if he did not ; and if the jury shall further find that the conductor then pulled the bell for the train to stop, that the train stopped, and two brakemen of the train came, whom the conductor instructed to put the plaintiff off the train, using no unnecessary force ; that said brakemen then put the plaintiff off ; that said plaintiff forcibly resisted being taken from his seat, and continued his resistance until he was entirely removed from the train, accompanying said

resistance with violent and profane language ; then the plaintiff is not entitled to recover in this case, if the jury shall further find that in putting said plaintiff off the train, no more force was used than was made necessary by the resistance of the said plaintiff.

2nd. That if the jury shall find the facts set forth in the defendant's first prayer, and shall further find from the evidence that the plaintiff attempted to get again on the train from which he had just been ejected, then the defendant's agents on said train were justified in preventing his so doing, by the use of as much force as was necessary to accomplish the purpose.

3rd. That if the jury shall find from the evidence that the plaintiff was a passenger on one of the passenger trains of the defendant, and while there was guilty of disorderly and improper conduct, and used profane and indecent language in the presence of other passengers of both sexes, and that he persisted in such disorderly and improper conduct, and in the use of such profane and indecent language, to the great annoyance of his said fellow-passengers, then the conductor of said train was justified in stopping the train, and having the said plaintiff put off, using no more force than was necessary to accomplish the purpose and to overcome the resistance of the plaintiff, if the jury shall find that he made resistance.

All of which prayers the Court granted. To the granting of the plaintiff's four prayers, the defendant excepted and took this appeal.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY and ROBINSON, J.

*Thomas Donaldson,* for appellant.

*Jas. A. L. McClure* and *Lewis H. Powell,* for appellee.

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellee who was a passenger on the appellant's cars, to recover damages for having been expelled therefrom by the conductor, and other employés of the company. There is a direct conflict in the testimony as to the cause of the expulsion, the circumstances attending and the degree of violence used in accomplishing it. It was for the jury to decide that question and they have done so. Our duty is confined to a review of the rulings of the Court below upon the law of the case to which exception was taken by the defendant. All the prayers offered on both sides, (four on the part of the plaintiff and three on the part of the defendant,) were granted. Those on the part of the defendant are not before us, inasmuch as the verdict and judgment were in favor of the plaintiff, and he has taken no exception to the granting of these instructions. The sole inquiry therefore is, was there error in granting the plaintiff's prayers or either of them?

In reviewing these prayers one of the questions presented is, were the jury rightly instructed upon the subject of exemplary damages? That the jury may be allowed to give exemplary or punitive damages against a railroad company in an action like this, if the circumstances of the case warrant it, is no longer an open question in this State. It was so held in the case of the *President of the Balt. & Yorktown Turnpike Road vs. Boone,* decided by this Court at its April Term, 1876. There the action was to recover damages for an expulsion from the defendant's horse cars, and by the plaintiff's second prayer, which the Court granted in that case, the jury were instructed that if they found for the plaintiff under his first instruction, " they should award him such sum as damages, as will *compensate* him for the injury to his person, feelings and character, arising from the unlawful act of the defendant, *and* if they believe the said unlawful act was deliberately

and forcibly done, then they may give such *exemplary damages* as. they may consider a proper punishment for the conduct of the defendant acting through its agent the conductor." In this instruction there is a plain statement of what constitutes damages by way of compensation, and in reference to that part of the instruction this Court said it "presents a sound and unquestionable proposition." As to the latter branch of it relating to exemplary damages, we said the question "is not entirely free from difficulty" but affirmed it upon the authority of the Supreme Court in *Quigley's Case*, 21 *How.*, 214, where it is said "whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person." This doctrine has also very recently been approved by the Supreme Court in a collision case: *Milwaukee & St. Paul Railway Co. vs. Arms*, 1 *Otto*, 493 ; where after reference to the case of *Day vs. Woodworth*, 13 *How.*, 371, where the rule of exemplary damages was discussed and recognized, and after quoting the language of Mr. Justice CAMPBELL, in *Quigley's Case*, 21 *How.*, 213, 214, the Court say : "Although this rule was announced in an action for libel, it is equally applicable to suits for personal injuries received through the negligence of others. Redress commensurate to such injuries should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful. act of the defendant and its consequences to the plaintiff: but they are not at liberty to go further unless it was done wilfully, or was the result of that reckless indifference to the rights of others, which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive and on this rests the rule of exemplary damages."

This seems to us to place the law on this subject upon safe and satisfactory grounds, and in view of these authorities there was clearly no error in granting the plaintiff's third prayer, to the effect that "if the jury find for the plaintiff, then they should award him such damages as will, under all the circumstances of the case, compensate him for the injury to his person and feelings, suffered by reason of the unlawful acts of the defendant; and if they find that plaintiff was treated with *unnecessary and reckless violence and indignity*, then they may award such further damages as they may think proper to punish such conduct and deter the defendant from like conduct in the future."

By the plaintiff's fourth prayer the jury were instructed that "even if they shall believe from the evidence that the plaintiff acted in a disorderly manner, and persisted in such disorderly conduct to the annoyance of the passengers, or refused to show his ticket on the demand of the conductor, and that it then became necessary under the rules and regulations of the company for the conductor to eject him from the cars, and that he was so ejected, still if they further find from the evidence that unnecessary force was used in such expulsion, then their verdict must be for the plaintiff; and in estimating the damages they may allow the plaintiff such sum of money as in their judgment will compensate him for the *wounds and injuries* inflicted upon him by the use of such unnecessary force, (if they shall find such wounds and injuries,) as well as for the mortification and indignity placed upon him should they find any such; and if they shall further find that there was such unnecessary forcible expulsion, and that defendant's employés acted in a *wanton, high-handed and outrageous manner*, then they may allow the plaintiff such further sum of money as in their judgment may be a proper punishment of the defendant." We find no error in this instruction. It concedes the plaintiff may have been at fault in the first instance, and subjected himself to law-

ful expulsion from the cars, and that the agents of the company had therefore the right to expel him. But in the exercise of this right it was their plain duty to use no more force or violence than was absolutely necessary to accomplish the expulsion. If in performing that duty, they used unnecessary force and violence and wantonly and in a high-handed and outrageous manner, subjected the plaintiff to the brutal treatment, both in removing him from the cars and after he was on the ground, to which he and his witnesses testified, then it seems to us clear, in view of the authorities to which we have referred, that their conduct rendered the company liable to exemplary damages. An excessive battery is a complete answer to a plea of *son assault demesne*, and if wantonly and maliciously inflicted, subjects the party making it to the same liability to exemplary damages as if he had been the original wrong-doer. The defendant had the full benefit before the jury of the testimony of its witnesses on this subject in conflict with that of the plaintiff's witnesses. By the granting of its prayers it had also the benefit of the law exempting it from all liability, if the jury found among other facts therein stated, that no unnecessary violence was used in putting the plaintiff off the cars and keeping him off until the train had started. Between these witnesses it was for the jury to decide, and in this case we find no error in any of the Court's rulings upon the subject of exemplary damages.

No objection is made to the granting of the plaintiff's second prayer which is simply that "if the jury find that defendant's agents expelled the plaintiff from its cars with unnecessary force and violence, then their verdict must be for the plaintiff" without stating any measure of damages. The plaintiff's first prayer is that "if the jury find from the evidence that the plaintiff paid the defendant the fare required to travel on defendant's cars from Philadelphia to Baltimore, and received a ticket as evi-

dence thereof, that the plaintiff upon the conductor's demand while so travelling exhibited said ticket to him, and when called upon again to do so was unable to find it, and so informed the conductor, then they are instructed that while it was the duty of the plaintiff to present his ticket to the conductor when demanded, it was equally the duty of the conductor to make his demand with becoming courtesy and demeanor, and to allow plaintiff every reasonable opportunity to comply with it; and if they shall believe from the evidence that had the conductor so acted plaintiff's ticket would have been produced, then the plaintiff could not legally be expelled from the car because of the non-production of his ticket under such circumstances, and the verdict in this case must be for the plaintiff unless the jury shall further find that the plaintiff acted in a disorderly manner to the annoyance of the passengers.'' Whilst it is not and cannot be successfully argued that it was not the duty of the conductor, as the prayer states, to make his demand for the ticket with becoming courtesy and demeanor, and to allow the plaintiff, especially after he had once seen the ticket in his possession, every reasonable opportunity to comply with the request, it is objected to the prayer that it does not submit to the jury to find that the conductor did not do his duty in this respect. If by this it is meant that the prayer *assumes* a fact of which there was no evidence, the objection is answered by the fourth rule and regulation respecting appeals (29 *Md.*, 2) it not appearing by the record that any objection thereto for such defect was taken at the trial. But it is further argued that the prayer was calculated to mislead the jury by the vagueness of its terms, inasmuch as it omits to leave to the jury to find that the conductor did not make his demand and give time to comply with it as the prayer states he should have done, and then invites the jury to *conjecture* what would have been done had the conductor so acted, and then on the assump-

tion the conductor had not performed his duty, and on the further assumption that the plaintiff would, under certain circumstances, have produced the ticket, the jury is told the verdict must be for the plaintiff unless he behaved in a disorderly manner to the annoyance of the passengers. This objection is certainly a most ingenious one and it must be admitted the instruction is not so explicit and free from fault as it might have been. But when read in connection with the testimony on the part of the plaintiff, on which it is based, and in connection with the defendant's prayers which were also before the jury, and which clearly state the facts as testified to by the company's witnesses, and if so found by the jury would defeat the plaintiff in his action, we are of opinion, there is no fatal error in it warranting a reversal of the judgment. There was evidence on the part of the plaintiff that the conductor's manner was rude and harsh; that the plaintiff had a ticket to Baltimore on his person, and that the conductor knew he had such ticket, for in his own testimony he swears the plaintiff had shown it to him when first called upon ; that it was not the conductor's duty or usual practice to take up Baltimore tickets until after passing Havre de Grace; that he made his peremptory demand for the ticket before reaching that point, and without giving reasonable time to comply with that demand, ordered the plaintiff to be put off the train while he was still searching for his ticket, and when as appeared afterwards it would soon have been found if he had been permitted for a few minutes to proceed quietly with his search. The non-production of the ticket under such circumstances clearly did not justify the expulsion, and in view of this testimony it was not, in our judgment, error to allow the jury, as the instruction in effect does, *" to believe from the evidence"* (and not to *conjecture* as the objection puts it) that the plaintiff would have produced the ticket, if the conductor had made his demand for it with becoming

courtesy and demeanor, and allowed him a reasonable opportunity to comply with the request. If this testimony was truthful (and the jury seem to have so regarded it,) then it is obvious no difficulty would have occurred if the conductor had followed his plain duty in the premises. In our opinion, with this testimony as well as the defendant's prayers before them, the jury could not have been misled to the prejudice of the defendant by this instruction.

*Judgment affirmed.*

(Decided June 19th, 1877.)

