SAMUEL E. TAYLOR, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 27, 1912.

1. **STREET RAILWAYS: Fire Wagon: Street Car Track: Ordinance.** Plaintiff was a fireman on a fire wagon forty-five feet long and in making the run to a fire had to turn from one street into another, which made it necessary that he stop the wagon across a street railway track. There was a city ordinance requiring street cars to stop when a fire wagon was approaching, and giving such wagon paramount right of way. It was *held* that though the fireman saw defendant's street car approaching he had a right to assume that it would stop; and that if when the car got close enough to be a warning to him that it would not stop, he had no opportunity to save himself by jumping off the wagon, he could recover damages for his injuries resulting from the collision.

2. ———: ———: ———: **Custom Pleading.** If an ordinance of a city gives right of way to a fire wagon running to a fire, and requires a street car to stop when ᴀ wagon approaches, it is not error to permit evidence that the street cars did customarily stop, though there was no custom pleaded, since such evidence was only proving obedience to the ordinance.

3. ———: **Expert Evidence: Cars on Line: Identical Car.** Expert evidence of the distance in which street cars which run on a certain line could be stopped at a certain place when going at a given speed, may be given without confining the question to the identical car which had caused the injury.

4. ——: **Damages: Instruction: Reasonably Likely.** It is not error in an instruction on the measure of damages to use the word "likely" instead of "certain," the instruction reading that plaintiff should be allowed damages for such future pain and suffering "as he is reasonably likely to suffer."

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

AFFIRMED.

*John H. Lucas* and *Piatt & Marks* for appellant.

(a) Plaintiff's statement that seeing the approaching car he drove on the track, there sat, watched and waited for it to run up and hit him, at all times knowing he could avoid a collision, must reverse this case. Getty v. Transit Co., 103 Mo. App. 564; Hawkins v. Railroad, 135 Mo. App. 524; Guinney v. Railroad, 167 Mo. 595; Ries v. Transit Co., 179 Mo.1; McGarth v. Transit Co., 197 Mo. 97; Moore v. Transit Co., 176 Mo. 528; Laun v. Railroad, 216 Mo. 563. (b) The statement of plaintiff's eye-witnesses that the car and truck both on the run came in view of each other only when they passed the corner building and neither stopped until the collision, must reverse this case. Markowitz v. Railroad, 186 Mo. 350; Dean v. Transit Co., 192 Mo. 584; Kinlen v. Railroad, 216 Mo. 158; Holland v. Railroad, 210 Mo. 350; Schmidt v. Railroad, 191 Mo. 215; Gabriel v. Railroad, 130 Mo. App. 657; Hudson v. Railroad, 101 Mo. 13.

*I. B. Kimbrell* and *F. W. Gifford* for respondent.

ELLISON, J.—Plaintiff was a fireman in the employ of the Kansas City fire department, and defendant is the operator of a street railway in that city. Plaintiff was injured by being struck by one of defendant's cars, and brought this action for damages. He recovered judgment in the circuit court.

Taylor v. Railroad.

Defendant's tracks run east and west on Eighteenth street and pass Agnes avenue, which runs north and south intersecting Eighteenth street. Each street is narrow, being about forty-five feet in width. It seems there is a "jog" of about forty feet where the avenue intersects with the street, and in order to continue on down the avenue you must make a turn into the street for the distance of forty feet to an entrance again into the avenue. A fire alarm was sounded, when plaintiff and a driver got upon the hook and ladder wagon which was about forty-five feet long, and started the horses rapidly down the avenue approaching Eighteenth street. On account of this "jog" in the streets, it became necessary to turn into Eighteenth street instead of crossing it at right angles, and then again into the avenue. To do this in the narrow streets with a fire wagon forty-five feet long, was a somewhat difficult performance, which the fireman call a maneuver in the shape of the letter "S." As plaintiff approached, he saw a butcher waving his white apron, as plaintiff supposed warning a car of the approach of a fire wagon. The wagon gong was sounded when plaintiff himself saw the car perhaps 180 feet away. The wagon was brought practically to a standstill on the railway track, waiting for the car to stop so they could make the proper turn. The car was then one hundred feet away. Plaintiff's seat on the wagon was seven feet from the ground. A city ordinance pleaded by plaintiff gave fire wagons and apparatus paramount right of way over the streets in going to a fire, and also made it the duty of all street employees in charge of a street car to stop the car when any fire wagon approaches, until it has passed by. Plaintiff, though seeing the approaching car that distance away, supposed it would stop as by observance of the law car operators always had. He continued to think it would stop until it was close enough (15 or

20 feet) for him to realize it would not, when he called profanely to the motorman why ·he did not stop. It was then too late for him to save himself by jumping from the wagon. He said the only place he could have jumped would have been on the track in front of the car. The car struck the wagon ·at the front wheels, which threw·him off and inflicted the injury of which he complains.

The first objection to the judgment, that plaintiff sat on the wagon seeing the car and ''watched and waited for it to run up and hit him,'' is put much too strong for the facts as stated by the plaintiff. He did sit on the wagon and saw the car coming, but not to ''hit him,'' for he all the time supposed it would stop, and when he saw no movement made to stop, he called to the motorman. It was then too late for him to jump from his high seat; he stated his only place to jump would have been on the track in front of the car.

The natural question follows, why did he suppose the car would stop? We think a good reason was shown. He, his fellow firemen and his great wagon of forty-five feet length, were in plain view, and it is common knowledge that fire wagons have paramount right of way, which every one concedes. When one is known to be approaching, footmen scurry to safety, vehicles get to one side and street cars stop. But in this case an ordinance was pleaded and proved requiring street cars to stop; and it was shown in evidence that they customarily did stop. Defendant objects to the right to show a custom when it was not pleaded. Custom, like many other words, may vary in its meaning with the connection in which it is used. In this instance, proving that cars customarily stopped, or that it was their custom to stop, was merely proving their general observance of the ordinance and thus showing that plaintiff not only had a right to rely upon the ordinance and that it would be obeyed, but that it had actually always been obeyed. This was

Taylor v. Railroad.

all proper enough to show that plaintiff did not invite defendant's servants to run over him and'explains why plaintiff was upon the track. It tended to take out of the case defendant's insistence that plaintiff could not recover on the last chance rule, or under any rule, because he willfully took position on the track and deliberately waited for defendant to ''hit him.'' In this view the case did not depend upon a custom; or upon an ordinance; nor does the petition found the right of action upon an ordinance. The ordinance was pleaded we assume, merely to permit proof in explanation of plaintiff's conduct. And it seems to be justified, for defendant continuously insists that plaintiff wilfully invited·and waited for the collision. We think no error was committed.

Objection, we think too critical, is made to the hypothetical question as to the distance in which a car could have been stopped, going at the rate of ten miles an hour, as the one in controversy was. We do not think there was any valid objection pointed out, when the matter is viewed from a practical standpoint. The witness was familiar with the grade and he was asked in what distance the cars which were run on that line, running at the rate of ten miles an hour, could be stopped. We judge from the objection that the question should have been made to apply only to the particular car which struck the wagon. If so, it would be rare that evidence of this nature could be produced for a plaintiff in cases of collision with cars. If there was any peculiarity about this car from those in general use on that line, defendant could have made it the basis for cross-examination, or evidence in its own behalf.

The next objection relates to instruction No. 1, in that it calls special attention to particular portions of the evidence in plaintiff's behalf. We think it does not do so in the sense complained of. It merely submits the hypothesis of facts upon which plaintiff's

case is based. It is a part of the basis of his case that he was a fireman in performance of his duty to the city, and when struck he was in the position made necessary by those duties.

It is then claimed that the instruction conflicts with defendant's on the matter of contributory negligence. But we find the instruction is right and whatever of wrong there was is found in defendant's instructions three and nine. Giving them was error in defendant's interest and, of course, it cannot complain.

Complaint is made of an instruction on the measure of damages limiting the damages to pain and suffering already endured "and such as he is reasonably *likely* to suffer therefrom in the future." Defendant insists the word "certain" should have been used instead of "likely." We think the objection has no substantial merit. [Illinois Cent. Ry. v. Davidson, 76 Fed. Rep. 517; Scott Twp. v. Montgomery, 95 Pa. St. 444; Curtis v. Railroad, 20 Barb. 282.]

In Devoy v. St. Louis Transit Co., 192 Mo. 197, an instruction using the words "reasonable probability" was approved, and so is that expression justified by the remark of Judge VALLIANT in Reynolds v. Transit Co., 189 Mo. 408, 422.

The last objection is that the verdict of $1500 was excessive. We have examined the evidence in connection with defendant's suggestion, and find the amount justified.

The verdict being for plaintiff, we must assume the evidence in his behalf to be the facts in the case, and in that view defendant has no standing in this appeal. Here was a large unwieldy fire wagon on the track, and defendant's car bearing down upon it, with every opportunity to stop, and did not do so. If the facts are as the evidence for plaintiff tends to show them, the conduct of defendant's servants in charge of the car was without excuse.

The judgment is affirmed. All concur.