## MAHONEY v. PEARCE
(No. 1410; March 21, 1928; 265 Pac. 446.)

152

*Nichols & Stirrett* and *E. E. Enterline,* for plaintiff in error.

*Hagens & Murane,* for defendant in error.

BLUME, Chief Justice.

On June 2, 1922, plaintiff, a truck-driver, and Mrs. Mahoney, wife of the defendant, had an automobile collision on the streets of Casper. On June 4, 1922, the plaintiff, according to his testimony, went to see the defendant in reference to the expenses of repairing defendant's car, injured in the collision, claiming that he should not be responsible

for all of the expenses. This was at the garage of one Van Sant, plaintiff's attention having been called to the fact that defendant was in the place. Upon meeting, the latter committed a battery upon the plaintiff, as a result of which one of plaintiff's teeth and the left jaw was broken. The testimony shows that he underwent three different operations. At one of the operations an aluminum plate was fitted into his mouth and was cemented and wired into his jaw in an effort to hold the two portions of the jaw bone together, so that they would knit. After the wiring was done, necrosis of the bone set in and a large part of the jawbone was eaten away. The two pieces of the jawbone were afterwards united by a soft cartilage. Plaintiff was in the hospital on two different occasions, the first time for approximately fourteen days and the second time for approximately three days, during which time a nurse or nurses attended him. For more than two months plaintiff was fed only liquid food through a tube, and for approximately three months the mouth was washed with an antiseptic solution through a tube in the opening of the jaw, to irrigate and cleanse the mouth. Where irrigation did not reach the pus it was necessary to use a probe or swab. Plaintiff was continuously under the care of a physician from June 4 until November, 1922, and during the treatments he underwent considerable suffering. As the direct and indirect result of the injury, he lost two teeth, in addition to the tooth which was broken by the defendant. The bones of the jaw have never grown together, leaving quite an interval which, instead of being rigid is merely filled by a soft cartilage which permits the jaw to wobble, distorts his face, impairs his speech, and gives very little, if any, power of pressure. The injury is permanent in its nature. Some other facts will be mentioned herein later, but the foregoing statement is sufficient to indicate in a general way the character of the injuries sustained by the plaintiff as a result of the battery above mentioned. Defendant admitted the battery, but claimed that it was in self defense. The case

was tried to a jury, who returned a verdict in favor of plaintiff in the sum of $8505.85, upon which judgment was rendered. From this judgment defendant has brought this case here by petition in error.

1. It was shown by the testimony that plaintiff was a truck-driver, driving his own truck; that the amount of his earnings depended largely on his individual exertions, and that work for truck-drivers was plentiful in the summer of 1922. Over the objection of the defendant, it was shown that the wages of the ordinary truck-driver was from $8.00 to $10.00 per day. Plaintiff was asked, and was permitted to state, over objection, what his earnings would have been during that summer, if he had not been injured, and other witnesses were permitted to state, over objection, what the earnings generally were of truck-drivers with a truck similar to that of plaintiff. The admission of this testimony is assigned as error.

It is not argued that it was improper to show the profits and earnings, so as to aid the jury in arriving at the value of the plaintiff's loss of time, and we need not discuss that point, but it is contended, as we understand it, that plaintiff could not testify as to what his earnings would have been during the summer of 1922, without showing his earnings previous to the time of his injury, and we are cited to Turner v. Ry. Co., 15 Wash. 213, 46 Pac. 243, in which it was held that the plaintiff in the case, a lawyer, was improperly permitted to state his own opinion or estimate of his loss of time without stating the facts upon which it was based, namely, his earnings of the past. That the earnings of the past furnish the proper basis for estimating the value of lost time in such case is also held in Sedgwick on Damages, Section 180; and see Bonneau v. Ry. Co., 152 Cal. 456, 93 Pac. 106, cited in defendant's brief. Counsel for defendant claims that the case at bar is similar to the Turner case, in view of the testimony that plaintiff's earnings depended largely on his own exertions. We can accept that view only partially, and must recognize the fact that the

occupations are dissimilar, making the rule of the Turner case inapplicable here. A truck-driver might be able to find plenty of work, while a lawyer would be anxiously waiting for clients. In a number of cases a plaintiff, in an action for personal injury, has been permitted to state his opinion and give his own estimate of the value of his lost time, as for instance, where a plaintiff was a farmer: Delano v. Pierce, 225 Fed. (C. C. A.) 976; a bartender: Schlumerecht v. City Ry. Co., 153 Ill. App. 25; a housekeeper: St. L. & S. F. Ry. Co. v. Horn, (Tex. Civ. App.) 130 S. W. 1025; a trader in cattle: G. C. & S. F. Ry. Co. v. Bell, 24 Tex. Civ. App. 579; a merchant: Howard v. McCabe, 79 Neb. 42. In fact, some of the courts have gone much further and have held that in many cases the jury may fix the value of lost time from their own knowledge. Thus it is said in Sutherland on Damages (4th Ed.) Sec. 1348, page 4719:

"In the case of an ordinary laborer the jurors may be presumed to be reasonably familiar with the value of his services, and they measure it by their knowledge and experience. The same rule has been applied to the value of the services of a nurse, to the earnings of a peddler who supported his family by his sales, of a merchant, of a farmer, though the cases are not in accord; and to those of a housekeeper."

We need not approve or disapprove this rule, but we have mentioned it to show that some courts have been rather liberal in fixing the method of determining the value of a man's time. The practice of a professional man is apt to be built up slowly, but when once established, it very frequently, and perhaps generally, brings in a steady income. The same thing applies in some other lines of occupation. It is for that reason that past income is held to be the best method for determining the value of lost time of men thus engaged. The reason of the rule fails, or at least is apt to fail, in cases like that at bar. The testimony shows that there was no or little work for truck-drivers in the winter; that such work is more or less seasonable, starting up some time

after the spring rains. One of the main factors, and, perhaps, the most vital one, to be considered is whether truck work was scarce or plentiful. The income of the plaintiff in the month of May, 1922, would not at all measure the value of his lost time in the following months, unless the conditions were similar. This may also be said as to the previous summer. We do not know whether or not this was true and we cannot, accordingly, say that the plaintiff should have shown these earnings in order to aid in determining the value of his lost time in the summer of 1922. According to the testimony there was plenty of work for truck-drivers during that summer. Plaintiff had the means to take advantage thereof and showed a disposition to do so. The value of the time of a truck-driver was shown, and rightly so, and the remaining testimony was simply intended to throw light on what plaintiff's time was worth outside of that of an ordinary truck-driver. A common laborer will ordinarily readily obtain work when there is plenty of it. We are inclined to think that this applies also to truck-drivers under conditions shown in this case, furnishing, accordingly, together with the testimony as to the rate of compensation, a reasonable basis for the questions asked the plaintiff and other witnesses. Counsel for defendant has not pointed out a better way of showing the value of plaintiff's lost time than the method adopted in the trial court, and we are not prepared to say, in view of all the testimony in the case, that there is any prejudicial error in the record in that respect.

2. Plaintiff complains of instructions relating to future pain and suffering. The court told the jury, in instruction No. 3, among other things:

"The elements of damages which the jury are entitled to take into account consist of all of the facts of the injury complained of, consisting of personal inconvenience, annoyance which the plaintiff has endured, bodily and mental suffering, permanent annoyance which is *liable* to be caused by any deformity resulting from the injury."

And in instruction No. 4, the court told the jury as follows:

"If you find that plaintiff is entitled to recover against the defendant then you will allow him a sum of money that shall reasonably compensate him for the time he has lost by reason of such injuries, if any, and for mental and physical suffering endured by the plaintiff by reason of said injuries, if any, and for such mental and physical suffering as the plaintiff *may* endure in the future. If you shall find that he *shall* endure mental and physical suffering in the future, then you will fix said damage at such amount as if paid at this time would reasonably compensate him for the damages sustained."

It is claimed that the court was not justified in permitting the jury to find any damages for future suffering because of the absence of any evidence in the record tending to show that there would be any. The testimony indicates that plaintiff's hearing was impaired, that part of the jawbone was gone, filled in only with soft cartilage, that plaintiff's teeth would not come together, and that whenever he bit upon anything hard, it caused him pain; that frequently, when eating, food would collect between the cheek and the gums, which he could only remove by inserting a finger; that the jaw pressure was slight and was permanently disabled to the extent of fifty per cent; that the method of cooking food for the plaintiff was required to be changed, causing him considerable annoyance whenever he would be away from home. These facts existed up to the time of the trial. We do not think that in view of this testimony the court erred in submitting the question of future pain and suffering to the jury. Supronowski v. Cab Co., 142 Wash. 65, 252 Pac. 155; Wilks v. Ry. Co., 159 Mo. App. 711, 141 S. W. 910; Swincsynski v. Coal Co., 151 Ill. App. 158; Buce v. Elvin, 122 Ia. 92, 97 N. W. 989; Weiler v. Ry. Co., 53 Hun. 372, 6 N. Y. S. 320.

It is further objected that the word "liable," used in instruction No. 3, and the word "may," used in instruction

No. 4, were erroneous and permitted the jury to speculate as to what future suffering plaintiff would sustain. It is undoubtedly true that instructions using these words have frequently been condemned by the courts, and attention to that fact was called in the case of C. B. & Q. R. R. Co. v. Lampman, 18 Wyo. 106, 129, 104 Pac. 533. Some of the courts do not find instructions using these words faulty. Western & A. R. R. Co. v. Dobbs, (Ga. App.) 137 S. W. 407; Travers v. Hartman, 5 Boyce 302, 92 Atl. 855. Courts that do, seem to manifest a distinct disinclination of later years to reverse a case on account of the use of these words in instructions, unless it appears from the instructions as a whole that the jury were allowed to speculate as to future suffering. Dean v. Ry. Co., 199 Mo. 386, 97 S. W. 910; Taylor v. St. Ry. Co., 166 Mo. App. 131, 148 S. W. 470; Western & A. R. R. Co. v. Dobbs, supra; Travers v. Hartman, supra; O'Keefe v. United Rys. Co., 124 Mo. App. 613, 101 S. W. 1144; Midland Valley Ry. Co. v. Hilliard, 46 Okla. 391, 148 Pac. 1001; Muncie Pulp Co. v. Hacker, 37 Ind. App. 194, 76 N. E. 770; P. C. C. & St. L. Ry. Co. v. Callius, 168 Ind. 467, 80 N. E. 415; St. L. I. M. & S. Ry. Co. v. Grinsley, 90 Ark. 64, 117 S. W. 1064; Smith v. Ry., 169 Ill. App. 570; Community Traction Co. v. Sear, 21 Oh. App. 282, 152 N. E. 757; Woodworth v. Ry. Co., 170 Ia. 697, 149 N. W. 522; In the case of Smith v. Ry. Co., supra, the court said:

"When the instruction is subjected to the close legal scrutiny applied to it by the learned counsel for plaintiff in error, it is not free from criticism. It is erroneous, and cannot be approved as a precise and accurate statement of law, for it authorizes a recovery of damages for pain in the future upon the belief by the jury in a mere possibility that future pain and suffering may be caused by the injury, which is not sufficient to warrant an assessment of damages. Amann v. Consolidated T. Co., 243 Ill. 263. Strictly and technically construed the instruction does not require proof of a reasonable certainty, or belief on the part of the jury, that pain will be endured in the future. We do not think, however, that the jury in reading the in-

struction and applying it to the facts in this case so read it or construed it. The evidence showed that at the time of the trial the plaintiff had not recovered from her injuries, and it necessarily followed that there would be future pain and suffering; and the jury would naturally consider the instruction as authorizing them to assess damages therefor."

And in the case of Woodworth v. Ry. Co., the Supreme Court of Iowa, after stating that instructions containing the words above mentioned had several times been held to be objectionable and cause for reversal, further stated that the objection in such case is of a technical character. Then proceeding to consider the facts in that case the court said as follows:

"There is, however, another feature of the case that, to our minds, is quite conclusive, and we prefer to rest our holding thereon. The pain and suffering for which compensation may be allowed is such as is incident to the injury. The future pain to be considered is such as is incident to the duration of the injury complained of. The duration of the injury includes the future inconvenience, the loss of time and earning capacity, the impairment of the enjoyment of life, and the physical pain and mental anguish arising out of such a situation. The future duration of a personal injury and of the suffering arising therefrom is often a question of mere opinion, based to a greater or a less extent upon speculation, and submitted to the jury upon conflicting evidence. In the case before us, the question of the permanency of the injury is not open to difference of opinion or speculation or conflicting evidence of any kind. So conclusive was the fact that no distinctive evidence was offered upon it by either party. The plaintiff's injury was the loss of both of his legs. Being necessarily permanent, nothing could be added to it, even by speculation of the jury. The impairment and inconvenience and anguish are inseparable from such permanency. We think, therefore, that in a case of indisputable permanent injury, such as the loss of bodily members, there is no room for prejudice in the form of the instruction here used."

We think that what is said in the last two cases cited is applicable in the case at bar. The injury was permanent,

and in the very nature of things of a character that future annoyance and pain was probable, if not inevitable. We cannot, accordingly, say that under the circumstances there was any prejudicial error in using the words above mentioned in the instructions.

3. The court in instruction No. 3 told the jury that they might take the expenses necessarily incurred by plaintiff on account of nursing into consideration in determining the amount of damages. It is claimed that this was erroneous on account of the absence of evidence in the record showing the reasonable value of such services. It was shown that a nurse attended upon plaintiff while he was at the hospital. It further appears, it is true, that plaintiff's wife took care of him at home during a long period of time. But she did not pretend in her testimony to be a nurse and plaintiff made no claim for compensation for her services. No such claim is made in the petition. Plaintiff alleged that he was required to employ the services of a nurse, which plaintiff's wife did not pretend to be. The various items of special damage claimed by plaintiff are, as we take it, itemized in the petition as follows: The sum of $1500 for lost time; the sum of $433.05 for money paid to a man to take plaintiff's place; the sum of $27.30 for medicines; the sum of $1025 for Dr. Pierce; the sum of $405 for Dr. Donovan; and a further sum of $115. All these items were shown to be reasonable. And while the allegations in the petition are not altogether clear, we may infer at least that the item of $115, which was hospital expense, was intended to include the claim made for nursing. The court, unfortunately, did not give any instruction setting forth the issues in the case, or the items of special damage claimed. But we cannot assume that counsel for the plaintiff made any greater claim in their statements to the jury than that set forth in the petition, or that the jury were led to believe that they were authorized to give plaintiff more special damages than the amount claimed in his petition. In Jennings v. Appleman, 159 Mo. App. 12, 19, the value of lost time of plain-

tiff had not been fixed by any testimony in the case. Notwithstanding that, an instruction was given authorizing the jury to give plaintiff damages on account thereof. Disposing of an exception to this instruction, the court, among other things, said:

"The judgment should not be reversed when there were facts and circumstances in the case, as here, from which a jury of practical men might figure the reasonable value of such time. As the instruction was proper in its general scope, it should, therefore, not be condemned as reversible error in the circumstances of the particular case, for if appellant here thought plaintiff's recovery on account of loss of time should have been limited to nominal damages, an instruction to that effect should have been asked by it and such was not done."

In the case of Murray v. Ry. Co., 101 Mo. 237, the situation was similar to that in the case at bar. No testimony fixed the value of the nurse's bill. The amount was comparatively small, and the court held that the jury, as men of ordinary prudence, could fix the amount. We need not go so far as that. But we do not believe that the jury were misled into believing that the services of a nurse employed by plaintiff including nursing on the part of his wife, in view of the fact that she did not pretend to be a nurse, and could not be said to have been "employed" by him as such. The item for nursing was accordingly small, was probably included in the hospital bill, and in view of all the circumstances of the case we do not think that the error complained of, if error at all, was such as would justify us in reversing the case.

4. As heretofore mentioned, the plaintiff and defendant's wife had an automobile collision on June 2, 1922. The defendant, upon the trial of the case, offered to prove, among other things, that on the evening of that day plaintiff and defendant's wife had an interview, during which plaintiff insulted her and threatened to slap her face. It is claimed that this testimony was admissible for the pur-

pose, first, of mitigating exemplary damages, and second, for the purpose of sustaining defendant's claim of self defense. The jury in this case allowed nothing as exemplary damages and it is not accordingly necessary to determine as to whether or not this offered testimony was admissible in connection therewith. We are unable to see how the fact that on June 2, plaintiff threatened to slap defendant's wife was at all likely to cause defendant to believe that plaintiff, a day or two later, would assault him. Aside from that, plaintiff did not carry out his threat, and it would have been just as likely or much more likely for defendant to have gained the impression that plaintiff was not a man to strike rather than the contrary. We think, accordingly, that the offered testimony was entirely too remote in its bearing upon the question of self defense.

5. It is claimed that instruction No. 4, already heretofore quoted, was erroneous because it mentioned nothing about basing the damages upon the evidence adduced at the trial. We think, however, that there was no error in that respect. Instruction No. 1 clearly directed the jury to base the damages upon the evidence. Instruction No. 6 told the jury that the burden of proof was upon the plaintiff to establish the damages by a preponderance of the evidence. Again, in instruction No. 17, the jury were directed to find the amount of actual and compensatory damages from the evidence in the case. In Instruction No. 16 the jury were told to construe all of the instructions together and that no attempt had been made to embody all the law in any one instruction. We think, accordingly, that the attention of the jury was sufficiently called to the fact that the amount of damages sustained by the plaintiff should be shown by the evidence in the case.

6. It is also urged as error that the court permitted the plaintiff to show the wealth of the defendant before any evidence of injury or damage was introduced. This matter, however, was largely within the discretion of the trial court,

and we do not believe that defendant was prejudiced by the course pursued, particularly in view of the fact that the jury allowed nothing for exemplary damages.

Finding no prejudicial error in the record, the judgment of the trial court must be and the same is hereby affirmed.

*Affirmed.*

KIMBALL and RINER, JJ., concur.