STATE FARM FIRE & CASUALTY COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE, V. WILLIAM J. MUTH ET AL., APPELLEES AND CROSS-APPELLANTS.

207 N. W. 2d 364

Filed May 11, 1973. No. 38783.

Fraser, Stryker, Marshall & Veach, for appellant.

Matthews, Kelley, Cannon & Carpenter and Burbridge, Burbridge & Parsonage, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This action is one for a declaratory judgment between the insurer, the insured, and the judgment creditor of the insured. It presents the question of the construction of an exclusion in a policy of liability insurance and the applicability of the exclusion to the facts as found by the trial court.

The language of the exclusion is as follows: "This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the insured." The pertinent insuring clause in the homeowner's policy involved in this case is as follows: ". . . to pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property

damage, to which this insurance applies, caused by an occurrence."

We now set forth the pertinent facts. The defendant Allen Muth, a minor, was an insured under the homeowner's policy of his parents, William J. Muth and Naomi R. Muth, by virtue of being a resident of their household. On September 2, 1970, Allen fired a B-B gun from a slowly moving automobile and the pellet struck James B. Brailey, Jr., in an eye, causing loss of sight in that eye. James recovered a judgment in a tort action against Allen. The State Farm Fire & Casualty Company, plaintiff and appellant herein, defended the tort action under a reservation of rights agreement. The ground of the reservation was that there was no coverage under the policy because under the facts the exclusion which we have previously set forth applied.

The trial judge in this case found that when Allen caused the gun to discharge in the direction of James he did not intend nor expect to do bodily injury to James, that Allen was negligent, and that the exclusion was not applicable.

Allen testified he pointed the gun "at his feet" without taking careful aim and that his intention was to "scare somebody." He was not a close acquaintance of James. He knew who James was because they had been in one class session together after the start of the school term. There had been no conflict between them. The evidence discloses that the act of Allen was a spontaneous one. There was conflicting evidence from which the court could have found Allen aimed at James and intended to hit him. We interpret the court's finding to mean it accepted Allen's version of the facts.

The appellant argues that if Allen "should have expected that his act . . . involved the risk of injury to Brailey, then it follows that the incident was not one within the coverage of the policy." On this point, during cross-examination of Allen counsel drew from him the concession that if one points a gun in the general

direction of a person, even though aim is not taken, there is a risk of hitting somebody. The cross-examination continued as follows: "Q. And that's what we mean by taking the risk of hitting somebody if you don't aim; right? A. Yes. Q. You understand that, don't you? A. Yeah. Q. And you understood that when you pointed the gun out that car window at that young boy, didn't you? A. I didn't think it would hit him or hurt him, because— Q. I am not asking you that; I am asking you, if you don't aim, and you aim a gun out a window, and there's a person over there, you could possibly hit him? A. You could possibly hit him. Q. And that's the risk that you were willing to take, wasn't it? . . . Isn't that right? A. I suppose." On redirect examination Allen testified that he did not think he was taking a chance of hitting James.

Language in liability policies excluding from coverage injury intentionally caused by the insured are common, but we have been cited no case, nor have we found any, interpreting the precise policy language we have here. The language usually found is: "injury . . . caused intentionally by or at the direction of the insured."

In accordance with the usual rule that the judgment of the trial court in an action where a jury has been waived has the effect of a verdict of a jury and will not be set aside unless clearly wrong, we feel ourselves bound by the findings of the trial judge that Allen did not intend to injure James. Belek v. Travelers Ind. Co., 187 Neb. 470, 191 N. W. 2d 819. While we might ourselves have come to a different conclusion than did the trial judge, we cannot say his findings were clearly wrong.

Accordingly, we believe the pertinent inquiry is whether the language "bodily injury . . . which is either expected or intended from the standpoint of the insured," means something other than "injury intention-

ally caused," and thus is there substance to the appellant's argument that coverage is excluded if Allen "should have expected that his act . . . involved the risk of injury"?

The term "expected" when used in association with "intended" carries the connotation of a high degree of certainty or probability and seems to be used to practically equate with "intended," because one expects the consequences of what one intends. See Webster's Third New International Dictionary (Unabr. Ed., 1968), pp. 799, 1175. It does not seem to us designed to substantially enlarge the exclusion.

We hold on the basis of the authorities which we hereinafter cite that, under the language of the exclusion in question, an injury is either expected or intended if the insured acted with the specific intent to cause harm to a third party. It seems to us to be immaterial whether the injury which results was specifically intended, i.e., the exclusion would apply even though the injury is different from that intended or anticipated. We find it difficult to precisely delineate the scope of the rule and recognize that there will be difficulties in applying the rule in concrete cases. For that reason we cite and discuss the following cases which we believe illustrate the intendment of the rule.

In State Farm Mutual Auto. Ins. Co. v. Worthington, 405 F. 2d 683, the Eighth Circuit had occasion to consider a factual situation similar to what we have here and a policy exclusion which read: "This policy does not apply: * * * to bodily injury * * * caused intentionally by or at the direction of the insured;". The court held that the language did not exclude coverage where the gun was fired intentionally with the purpose of frightening, but where there was no intention to shoot a person. We do not, however, intend to adopt the holding in that case insofar as it may lend support to the proposition that the exclusion does not apply where one person is shot at with the intent to harm,

but a bystander is injured. That question is not before us here.

A somewhat similar case on the facts is Lumbermen's Mut. Ins. Co. v. Blackburn (Okla.), 477 P. 2d 62. The language of the exclusion there was the same as in the case just cited. The trial court found that the insured intentionally threw the rock which caused the plaintiff's injury, but did so without the intent of causing injury. The court on appeal held the exclusion did not apply. We do not, however, adopt the holding in that case insofar as it appears to hold that the exclusion does not apply unless the intention is to inflict the injury actually inflicted and unless the act is directed specifically against the party injured. Again that question is not before us.

A case which seems to illustrate a situation which would come within the language of the exclusion we have in this case is found in Rankin v. Farmers Elevator Mut. Ins. Co., 393 F. 2d 718. There the insured deliberately sideswiped a motorcycle, causing personal injuries to the rider. The exclusion which was identical to that of the two previously cited cases was held to be applicable. The court said: "The serious injury of the rider of the motorcycle was a consequence of the deliberate collision and should have been expected and hence intended." This case, in our view, illustrates the type of situation to which the language we have before us here would be properly applicable. If, in the situation before us, the trial court had found that Allen had intended to hit James, even though he might have intended no serious injury, the language of the exclusion would have eliminated coverage.

Another case which illustrates the type of situation in which the exclusion in the policy under consideration would apply is Kraus v. Allstate Insurance Co., 379 F. 2d 443, in which the Third Circuit was applying Pennsylvania law. In that case the insured murdered his wife and killed himself by setting off a dynamite

blast while the two were seated in an automobile. The plaintiff's decedent, a passerby, was killed and other bystanders were injured. The language of the exclusion was the same as in the other cases we have cited. It was held that the exclusion was applicable and precluded coverage. In that case the insured intended harm to his wife and the means which he used were such that he could clearly expect to harm others who might be within the range of the explosion. The court in that case laid some stress upon the fact that the insured was an expert with explosives and could readily anticipate the probable results thereof.

Another case which illustrates the rule we adopt is Peterson v. Western Casualty & Surety Co., 5 Wis. 2d 535, 93 N. W. 2d 433. In that case the insured was fleeing in an automobile to escape arrest on a traffic charge. He was cornered by several police cars. In attempting to back his automobile from its cornered position he knocked over and injured the plaintiff, a police officer, who had opened the door of the insured's auto to effect his arrest. The exclusion was held not to be applicable because the insured did not specifically intend to harm the plaintiff or anyone. The appellate court described the conduct as grossly negligent, but pointed out that while gross negligence might be considered as intentional wrongdoing for some purposes, it was not to be so considered for purposes of exclusion in the policy where there was not a specific intention to harm or injure.

The case of Morrill v. Gallagher, 370 Mich. 578, 122 N. W. 2d 687, also illustrates the rule we adopt. There the insured as a practical joke threw a lighted firecracker, referred to as a cherry bomb, into a room where the plaintiff, a fellow employee, was working. The insured's purpose was to startle him. The results turned out to be far more serious than anticipated and caused impairment of the plaintiff's hearing and psychic disorder. The exclusion for intentional injury was held

not applicable. The court said: "Some emphasis is placed on exclusion (c) on the ground that in the instant case the firecracker was thrown intentionally. Unquestionably such was the case, but it will be noted that under the language of the excluding clause the *injury* must be caused 'intentionally.' There is nothing in this case to justify a conclusion that either Gallagher or Canfield intended to cause any physical harm to plaintiff."

On the basis of the foregoing analysis and authorities, we conclude that the rule we have earlier formulated is the proper one and tends to promote the fulfillment of the reasonable expectations of the insured and the injured, and at the same time will tend to promote the public policy of excluding coverage where there is a deliberate intention to cause physical harm or where, as in Rankin v. Farmers Elevator Mut. Ins. Co., *supra*, such intention must be attributed as a matter of law because the acts are of such a nature that the injury must necessarily be expected.

The appellee, James Brailey, assigns as error the refusal of the trial court to allow him an attorney's fee to be taxed as costs for the services of his attorney in the court below in this action. He relies upon section 44-359, R. S. Supp., 1972, and our recent holdings in Workman v. Great Plains Ins. Co., Inc., 189 Neb. 22, 200 N. W. 2d 8; and State Farm Mut. Auto. Ins. Co. v. Selders, 189 Neb. 334, 202 N. W. 2d 625; and upon Metcalf v. Hartford Acc. & Ind. Co., 176 Neb. 468, 126 N. W. 2d 471.

In Workman v. Great Plains Ins. Co., Inc., *supra*, this court held that the 1971 amendment to section 44-359, R. R. S. 1943, made it applicable to declaratory judgment actions brought by the insured against the insurer. In State Farm Mut. Auto. Ins. Co. v. Selders, *supra*, we said the right to attorney's fees did not depend upon who brought the action and awarded attorney's fees to the insured in an action brought by the insurer.

In the earlier case of Metcalf v. Hartford Acc. & Ind. Co., *supra,* we held that a judgment creditor was entitled to attorney's fees when he had to bring an action against the liability insurer to collect his judgment against the insured. This action is brought by the insurer against both the insured and the judgment creditor and its result is tantamount to an action by the judgment creditor on the policy. The court below erred in not awarding an attorney's fee to James Brailey in this action.

The appellant urges that we overrule Selders and argues that before we can reach the result we now do, we must overrule Lundt v. Insurance Co. of North America, 184 Neb. 208, 166 N. W. 2d 404. Our holdings in State Farm Mut. Auto. Ins. Co. v. Selders, *supra,* and in Lundt v. Insurance Co. of North America, *supra,* are clearly distinguishable. In Lundt v. Insurance Co. of North America, *supra,* the facts were that the plaintiff had earlier obtained a judgment against the insured which the defendant liability carrier paid. The plaintiff then sought in the cited case to obtain an attorney's fee from the insurer for its services to the plaintiff in the action in which it obtained the judgment against the insured. There never was any action on the policy because the insurer had paid. The situation in Lundt v. Insurance Co. of North America, *supra,* is the same as if the court below or this court were being asked to award Brailey an attorney's fee for the services of his attorney in obtaining the judgment against Muth. Lundt has no application to this case. Appellee James Brailey is awarded an attorney's fee of $750 for services of his attorney in this court.

AFFIRMED IN PART, AND IN PART REVERSED

AND REMANDED FOR FURTHER PROCEEDINGS.

Note: See *post* p. 272, for Supplemental and Amendatory Opinion.