**James D. COLEMAN, Appellant (Plaintiff),**

v.

**Robert W. STROHMAN, Appellee (Defendant).**

**No. 90–152.**

Supreme Court of Wyoming.

Nov. 21, 1991.

Les Bowron of Beech Street Law Offices, Casper, for appellant.

John I. Henley of Vlastos, Brooks & Henley, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant James Coleman sued to recover damages for personal injuries he suffered when appellee Robert Strohman punched him. The jury found Strohman acted in self-defense when he committed the battery and denied recovery. Coleman appeals the jury's verdict.

The controlling issue here is whether the district court erred in not instructing the jury on Coleman's alternative theory of recovery, which was that Strohman acted negligently in his use of self-defense.

We affirm.

Strohman's seventeen-year-old son rode his motorcycle through the intersection in front of Coleman's house without coming to a complete stop at the stop sign. After first yelling at him, Coleman jumped in his car and chased the young Strohman, who escaped by driving his motorcycle down a ravine. On arriving home, he informed his father (Strohman) of the incident.

About two hours later, a co-worker, who lived across the intersection from Coleman, asked Strohman to come over and work on his wife's car. On his way to the co-worker's house, Strohman, riding a bicycle, noticed Coleman in his front yard. Strohman rode over, laid his bicycle down, and while standing on the sidewalk, asked Coleman if "he was the man [who] was chasing a young fellow on the motorcycle awhile ago."

At this point, Coleman and Strohman provided conflicting testimony of the events leading to the altercation. Coleman testified that Strohman hit him without verbal or physical provocation and without warning. Strohman testified that Coleman dropped his shoulder, attempted to hit him, he blocked the swing, and struck Coleman on the left cheek, knocking him to the ground.

The trial court refused to instruct the jury on Coleman's alternative claim that Strohman was negligent in using excessive force to defend himself. The trial court instead gave the following instruction:

"The Defendant, will not be liable to the Plaintiff on his claim of battery if the affirmative defense of self-defense is established. This defense is established if you find both of the following:

"1. The Defendant honestly and reasonably believed (although perhaps mistakenly) that under the circumstances it was necessary for him to use force to protect himself against an actual or apparent threatened harmful contact; and

"2. The Defendant used no more force than a reasonably prudent person would have used under the same or similar circumstances to protect himself against the actual or apparent threatened attack."

The jury observed the witnesses, heard the evidence, deliberated, and returned a verdict finding that Strohman acted in self-defense when he punched Coleman. The jury, in other words, believed Strohman's version of the incident.

Coleman admits that the jury's finding of self-defense bars his claim for battery. Coleman maintains, however, that the trial court should have instructed the jury that "the Defendant negligently used excessive force to repel a perceived attack."

In *Tatman v. Cordingly*, 672 P.2d 1286, 1289 (Wyo.1983), we stated that the following instruction accurately stated the law of self-defense in Wyoming and its limits:

"Thus, even acting in self-defense, a person may be liable for injury inflicted upon the aggressor. This is the case when the defendant is not justified in his belief that he was in danger, or when the defendant uses excessive force, or when the defender continues to exert force after the aggressor is rendered disarmed or helpless."

We explained in *Tatman* that a claim of self-defense "must be based upon reasonable grounds." 672 P.2d at 1290. The jury is, therefore, required to apply an objective standard in deciding whether an individual's belief that it was necessary to defend himself was reasonable.

Coleman's theory of negligence depended upon the jury finding that Strohman failed to act reasonably in defending himself and that he used excessive force. The self-defense instruction given required the jury to find that Strohman's use of self-defense was both reasonable and without excessive force. We stated in *Weaver v. Mitchell*, 715 P.2d 1361, 1363–64 (Wyo.1986), that "[t]he trial court is not obligated to give instructions in the language of their proponent and may refuse proposed instructions, though correct, if the principles embodied in the requested instructions are covered by other instructions."

Appellant claims the court should have instructed the jury that appellant could recover if appellee "negligently used excessive force." Negligence is a failure to act as a reasonable, prudent person in the same or similar circumstances. The instruction given by the court required, to establish self-defense, that appellee must have "honestly and reasonably believed * * * it was necessary for him to use force * * * [and that he] used *no more force* than a *reasonably prudent person would have used under the same or similar circumstances* * * *." Although the term negligence is not employed in this type case, the principle for which appellant contends is clearly embodied in the instruction given. Thus, the principle that an individual's use of self-defense must be no more force than a reasonably prudent person would use under the same or similar circumstances was before the jury when it decided the issues presented in this case.

It was not error to refuse appellant's instruction on negligence.

The verdict of the jury and the judgment entered thereon are affirmed.

URBIGKIT, Chief Justice, dissenting.

I respectfully dissent. To approve what turned out to be a directed verdict for Robert W. Strohman by the trial court's elimination of a significant claim for recovery is wrong for two valid reasons. Although the second reason, refusal to give a theory of the case instruction, is troubling and, in my opinion, clearly wrong, *Barber v. Sheridan Trust & Savings Bank*, 53 Wyo. 65, 78 P.2d 1101 (1938), the first reason, a procedural due process denial, is of greater concern.

In this case, both parties pleaded, prepared and tried the case on dual theories for contended recovery by the assaulted appellant, James D. Coleman. Those theories were battery as an intentional tort and negligent infliction of harm as a non-intentional tort. For the first time at instruction conference, the trial court, *over the objection of both counsel,* withdrew negligence from jury decision. The psychological impact on the jury would certainly have been substantial where, in opening statement and evidence, the jury was presented with two theories to then have the case submitted as only an intentional tort fistfight. In reality, the substantial affect on the jury of the directed verdict which denied the negligence claim from jury review was then under the failed situation of the case to also predetermine the jury verdict on the intentional tort.[1] By instruction given and denied, the jury verdict result becomes procedurally determined *on both issues.*

I likewise do not find the trial court to have been substantively correct in denial to the litigant of his theory of the case instruction. *Smith v. State,* 773 P.2d 139 (Wyo.1989); *Stapleman v. State,* 680 P.2d 73 (Wyo.1984); *Alabama Farm Bureau Mut. Ins. Service, Inc. v. Jericho Plantation, Inc.,* 481 So.2d 343 (Ala.1985); *Clary Ins. Agency v. Doyle,* 620 P.2d 194 (Alaska 1980); *Newell v. Town of Oro Valley,* 163 Ariz. 527, 789 P.2d 394 (1990); *White v. Uniroyal, Inc.,* 155 Cal.App.3d 1, 202 Cal. Rptr. 141 (1984); *Nelson v. Caterpillar Tractor Co.,* 694 P.2d 867 (Colo.App.1984); *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.,* 112 Idaho 722, 735 P.2d 1033 (1987); *Martin v. Heddinger,* 373 N.W.2d 486 (Iowa 1985); *Schallenberger v. Rudd,* 244 Kan. 230, 767 P.2d 841 (1989); *Moody v. Pulte Homes, Inc.,* 423 Mich. 150, 378 N.W.2d 319 (1985); *Tope v. Taylor,* 235 Mont. 124, 768 P.2d 845 (1988); *Colorado Environments, Inc. v. Valley Grading Corp.,* 105 Nev. 464, 779 P.2d 80 (1989); *Adams v. United Steelworkers of America, AFL–CIO,* 97 N.M. 369, 640 P.2d 475 (1982); *Burke v. American Network, Inc.,* 95 Or.App. 274, 768 P.2d 924 (1989); *Kreager v. Blomstrom Oil Co.,* 379 N.W.2d 307 (S.D.1985); *Goode v. Dayton Disposal, Inc.,* 738 P.2d 638 (Utah 1987); *Gammon v. Clark Equipment Co.,* 104 Wash.2d 613, 707 P.2d·685 (1985); *Danco, Inc. v. Donahue,* 341 S.E.2d 676 (W.Va. 1985). *See also Short v. Spring Creek Ranch, Inc.,* 731 P.2d 1195 (Wyo.1987).

This modest list is only representative of the identically stated multitude of decisions nationwide. We consider here a very basic principle of both justice and fairness in the operation of any judicial system.

This writer remains adamant that the Wyoming judicial system is far too willing to take the case away from the litigants by denial of a theory of the defense or claim.

---

1. In Tegtmeier, *Theory of the Defense,* 42 Mercer L.Rev. 593, 593 (1991), the author explores the axiom that in a jury trial presentation "[w]ithout an effective theory, there is no credibility [and] [w]ithout credibility, the trial is but a futile exercise." This well-considered article relates to the criminal defense, but can equally and emphatically be applied to the plaintiff's tort case. If the jury or judge cannot understand where the trial presentation is going, they certainly cannot or will not be able to tell when or if ever counsel, as captain of the ship, gets there. By directed verdict of non-instruction, Coleman's theory of the case was decimated and the integrity of his status before the jury was destroyed. Following the decision of the trial court on denial of the second theory upon which the trial presentation had been centered, the case continued like a lame duck with, at best, only one wing remaining.

*McInturff v. State*, 808 P.2d 190, 198 (Wyo. 1991), Urbigkit, C.J., concurring in part and dissenting in part. Furthermore, we would normally achieve an earlier final disposition, retain constitutional right to a jury decision and most likely secure enhancement of justice by a more confined and curtailed fact finding function by the trial judge. Denial of the theory of the case or defense instruction moves decision making from the jury to the trial court. *Erickson v. Magill*, 713 P.2d 1182 (Wyo.1986); *Vassos v. Roussalis*, 658 P.2d 1284 (Wyo.1983); *Barnes v. Fernandez*, 526 P.2d 983 (Wyo. 1974). The case should not be removed from jury review by the rejection of theory of the case instructions by the litigants. Rather, we should continue the historical philosophy that rights of recovery should be applied in decision by the fact finding jury, *Cimoli v. Greyhound Corporation*, 372 P.2d 170 (Wyo.1962), and not by the preclusive decision making, as a matter of law, by the trial judge.

What we do in this denied theory of the case appeal is to apply our own "factual" analysis upon that decision initiated by the trial court while the jury is excluded from the decisional process. *Cf. Ford Motor Co. v. Arguello*, 382 P.2d 886 (Wyo.1963) and *Culver v. Sekulich*, 80 Wyo. 437, 344 P.2d 146 (1959). "It is the function of an appellate court to ascertain whether or not there was substantial evidence upon which the trier of fact could base its opinion if it believed the testimony. It is not for us [the appellate court] to evaluate the evidence that was presented." *Culver*, 344 P.2d at 156. Consequently, it is the jury that is denied its constitutional fact finding responsibility when we reverse general principles in denying the jury as the venire of the citizenry its right to determine the facts. Wyo. Const. art. 1, §§ 6, 8 and 9; *Brenner v. City of Casper*, 723 P.2d 558 (Wyo.1986); *Long v. Forbes*, 58 Wyo. 533, 136 P.2d 242 (1943).

The theory of the case instruction rule is universal in court application and was well-defined and consistently applied in Wyoming legal history until case deviation in recent time. This court has succinctly recognized that "[b]oth parties were entitled to proper instructions covering their respective theories regarding the evidence submitted, and, it was, of course, for the jury then to determine the issue." *Barber*, 78 P.2d at 1109.

## I. PROCEDURAL

In his 1989 complaint, Coleman alleged negligence and intentional act theories for recovery. Strohman responded in answer by general denial and eleven affirmative defenses. Those included failure to state a claim; Coleman caused his own injury; Coleman was negligent; assumption of risk; failure to mitigate; the complaint was ambiguous and failed to set forth a complaint in a clear and concise fashion; no proximate cause; if Strohman was negligent, which negligence is denied, Coleman assumed the risk or was more negligent (comparative negligence); injuries resulted from events not involving negligence; injuries proximately caused by acts of others than Strohman, which included Coleman; and finally, lack of jurisdiction by contention that damages were insufficient to reach the court's minimum jurisdiction ($7,000).

A jury of twelve was first requested by Coleman and then re-requested by Strohman. Pretrial memoranda were submitted in which Coleman reiterated his two theories for recovery, negligence or intentional act:

> 1. Did the actions of the Defendant constitute negligence (i.e., did Defendant breach a duty owed to Plaintiff)?
>
> 2. Was the Defendant acting in self-defense or stated differently, was the Plaintiff guilty of contributory negligence?

Strohman responded by memorandum which did not enumerate legal issues or factual theories. The pretrial order provided in part:

> Pretrial memoranda were submitted by counsel, filed herewith, and incorporated in this order for purposes noted. These memoranda do not restate the issues which are framed by the pleadings.

The defense of failure to state a claim filed by Strohman was never called up for hearing and no other attacks on the dual theories of Coleman were made pre-trial or during the evidentiary presentation. At the close of Coleman's evidence and again after the close of all evidence, Strohman moved for a directed verdict which was overruled without significant discussion by the litigants or the trial court.

The first notice given by the trial court that negligence would not be submitted as a jury issue was at the instruction conference. Both litigants objected to that decision.

[COUNSEL FOR STROHMAN]: The Defendant Robert Strohman would object in that several instructions that were tendered by the parties are not to be given by the Court. The first of this is Plaintiff's Offered Instruction No. 14, this was an instruction that both the plaintiff and the defendant requested, and the definition of negligence both the plaintiff and defendant feel in this matter that the Jury should be entitled to determine that Mr. Strohman, if he did not act in self defense, nevertheless did not act intentionally, but rather merely negligently. We have this belief or the defendant has this belie[f] due to the fact that the Jury could reasonably find that force was not necessary to thwart an attack upon him by the plaintiff, in reality but the defendant could have easily inferred Mr. Coleman's actions to be significant threat of force, so that he reacted accordingly. While this may have been a misperception it would not be fair to the defendant to have this misperception, this negligent act defined as an intentional act, upon which punitive damages could be awarded.

The defendant states that this would be depriving him of his rights to due process of law based upon the fact that a driver going through an intersection with a misperception of the facts and circumstances, would not be subjected to the same civil remedies as this defendant now apparently will be subjected to if the Jury finds in the plaintiff's favor.

The defendant also objects that plaintiff's offered Instruction No. 19, defining comparative negligence and comparative fault to the parties will not be given, again the defendant feels that the Jury could easily find from the facts of this litigation that one or both of the parties were negligent, and the Jury ought to have the opportunity to make that finding.

Defendant further objects that his proffered Instruction F was not given. Instruction F defines the right of the defendant to stand his ground and not retreat so long as he does not use deadly force, if he in fact perceives threatened attack upon his person. We believe this is a proper statement of the law of Wyoming, and that there is no sufficient instruction to the Jury to convey this law.

\* \* \* \* \* \*

The defendant further objects that its offered Instruction H was not given, again defining negligence and fault, once again the defendant believes that there was sufficient evidence so that the Jury could in fact find negligence and fault on the part of both the plaintiff and the defendant, and the Jury should have been permitted to make that determination.

[COUNSEL FOR COLEMAN]: It is the position of the Plaintiff James Coleman in this case, which position is that as stated by [Strohman's counsel] and in partial agreement with the defendant that certain instructions offered by the plaintiff, which presented the theory of negligence, were improperly refused by this Court, and those are specifically Plaintiff's Offered Instructions 5, 11, 12, 14, 16 and 17. The plaintiff brought a complaint which alleged intentional battery or negligence on the part of the defendant. These instructions would have allowed the Jury to be instructed on alternative theories and that the alternative theory instruction was No. 5. Rather than discuss each of those individually let it be said that it was the plaintiff's position that the Wyoming Supreme Court in Tatman versus Cordingly impli-

edly suggested that even if an actor acted in self defense, he may nevertheless be liable for injury inflicted if he is not justified in this belief[,] that he was in dange[r] or that if he used excessive force to defend himself. The Wyoming Supreme Court did not specifically use the word negligence, but it is plaintiff's position that the theory is supported by the Restatement of Torts Second at Section 8 A, regarding state of mind and intent, that there is a descending continuum regarding the state of mind which is in three parts, specific intent to cause harm or secondly a probability that consequences will flow, may then decrease and become less than substantially certain. The actor conduct allows us the character of intent and becomes * * * mere reckless, and thirdly as that probability decreases a farther amount only to a risk that result will follow becomes ordinary negligence and defined by Section 382 of the Restatement. That line of thinking also appears in Prosser on Torts at Section 8.

It is Plaintiff's position that the facts of this case demonstrated that the Jury could find that the defendant was liable for the injuries suffered by the plaintiff on the theory of intentional miscond[u]ct, if it found that nothing about the plaintiff's actions in any way provoked the defendant striking him. Alternatively it is the plaintiff's position that the Jury could reasonably find that some physical movement on the part of plaintiff provoked an unreasonable response from the defendant, which was either the unreasonable use of self defense or the use of excessive force to defend himself. Neither of which constitute an intentional infliction of a battery, and both of which suggest a lack of prudence on the part of the defendant.

In effect the Court has dismissed that portion of the plaintiff's complaint and

reduced this case to one which only allows the Jury to determine the question of battery, and I believe with some differences of opinion about the effect of that ruling, plaintiff and defendant are in effect in agreement on that subject.

As for the instructions which the Court refused as offered by the defendant, plaintiff's position is, which do not apply to this theory of negligence, plaintiff's theory, those were properly refused. They are older statements of the law, which have been supplemented and made modern by the decision in Tatman versus Cordingly.

One other instruction refused by the Court which the plaintiff offered, Instruction No. 7, which defined intent and carried forward with this descending statement of mind concept as defined above did mention negligence, and it properly defines this descending theory of the state of mind of an actor as earlier discussed.

\* \* \* \* \* \*

[COUNSEL FOR COLEMAN]: I do need to state one other objection, that is due to the Court[']s ruling on instructions already given the plaintiff's offered Special Verdict Form has in effect been refused, that verdict form would have allowed the Jury to select one of two alternative theories of recovery, which the Plaintiff offered, and should have been discussed in the objections made to all of the refused instructions discussed above.

Responsive to these objections and comments, the trial court specifically rejected and marked the instructions as "INSTRUCTION REQUESTED BY [defendant or plaintiff] AND REFUSED BY THE COURT," which were tendered to present the issue of negligence recovery by a jury decision.[2] Although neither the opening

---

2. In total, Coleman and Strohman submitted ten instructions relating to Coleman's negligence theory for recovery. All ten were rejected by the trial court. The more comprehensive addressing both intentional tort and negligence as obviously submitted by Coleman followed his

pleading and evidentiary theory of the case presentation in statement:

INSTRUCTION NO. 5

The Plaintiff claims he was injured through the acts of the Defendant. Specifically, he claims damages under two alternative theories. First, Plaintiff claims that the Defendant

nor the closing arguments are provided in the record for present consideration, it is apparent from reading the entire transcript that negligence was a significant theory of Coleman's case for general approach and evidentiary presentation. Likewise, the obvious theory of defense was factually the automatic reaction of Strohman in repelling the attack when Coleman tried to hit him first. Negligence or lack thereof was intrinsically woven into the evidence and organization of the case by both litigants.

Here, a theory of the case instruction analysis is different from most cases. Normally, the litigants dispute its usage, but both agreed here that the case properly involved a negligence claim. In denial of any negligence instruction, the trial court usurped both litigants' due process rights to identify their litigation. By the trial court's decision, the inevitability of appeal was created no matter what the jury decision might have been. A directed verdict on negligence against Coleman was grant-

ed without any specific request made by the favored litigant, Strohman. Rights to both due process and to a jury trial were violated. In *Goodman v. State*, 573 P.2d 400, 408 (Wyo.1977) (quoting *Blakely v. State*, 474 P.2d 127, 129 (Wyo.1970)), we said:

"In order to meet the basic requirements of due process, it was necessary for the court in Blakely's trial to instruct on defendant's theory of the case ...," and failure to do so resulted in a denial of due process.

## II. NEGLIGENCE CLAIM FOLLOWING A BATTERY OCCURRENCE

We then move to the substantive issue—a negligence claim following a battery occurrence—where alternative claims are founded on intentional and negligent tort. Analysis requires a two-stage consideration to properly understand the case. It is first necessary to determine whether both con-

committed a battery upon him by intentionally and without his consent striking him in a rude, insolent or angry manner causing injury and damage. In the alternative, he claims that in the mistaken belief of his need to defend himself from Plaintiff, the Defendant negligently used excessive force to repel a perceived attack which resulted in Plaintiff's injuries. Defendant denies fault.

In order to prevail on this first claim (the tort commonly referred to as battery) the *Plaintiff* must prove by a greater weight of the evidence:

1) The Defendant intentionally struck Plaintiff in a rude, insolent or angry manner, and

2) Plaintiff did not consent to those acts, and

3) Plaintiff suffered injury and damages as a result, and

4) The nature and extent of Plaintiff's injuries or damages.

With respect to the first claim, the Defendant admits that he struck the Plaintiff, but contends that he did so in defense of himself. With respect to his claim of self defense, the *Defendant* must prove by a greater weight of the evidence:

1) The [D]efendant honestly and reasonably believed that under the circumstances it was necessary for him to use force to protect himself against an actual or apparent threatened harmful contact; and

2) The Defendant used no more force than a reasonably prudent person would have used under the same or similar circum-

stances to protect himself from the actual or apparent imminent contact.

You must first decide if the three elements of battery have been proved by Plaintiff, then decide if the two elements of self defense have been proved by the Defendant.

With respect to his second claim (negligence) the *Plaintiff* must prove by a greater weight of the evidence:

1) The Defendant negligently used excessive force to repel a perceived attack and,

2) The negligence of the Defendant caused or contributed to the injury and damages suffered by the Plaintiff, and

3) The nature extent of Plaintiff's injuries and damages.

The Defendant claims that his negligence was less than that of the Plaintiff. With respect to Defendant's claim that the Plaintiff was negligent, the *Defendant* must prove:

1) Plaintiff negligently provoked Defendant's acts, and

2) Plaintiff's negligence caused or contributed to his own injuries and damages.

Plaintiff denies that he was negligent and denies that his negligence (if any) contributed to his injuries.

GIVEN:

_____
Judge

INSTRUCTION REQUESTED BY PLAINTIFF AND REFUSED BY THE COURT.

/s/
_____
Judge

(Emphasis in original.)

ventional assault and an intentional battery tort can be simultaneously pleaded and pursued with a negligence based claim. If this first stage is answered in the affirmative, then the second inquiry is factual—was this case one where the technical condition of some evidence existed to require mandatory submission of the theory of the case instruction to the jury? Here, as earlier stated, the case is different from most of the many theory of the case appeals since here both litigants agreed that the issue was properly presented for jury decision, but the trial court refused to permit the jury to decide the issue.

Neither Strohman in present appellate briefing nor the majority in its opinion undertake this character of analysis, but instead rely on the giving of a self-defense instruction as a factor of the intentional tort claim which resulted in the jury verdict for Strohman. Self-defense is not ignored. What is ignored is the method of exercise of a judicial right which invades questions of a negligence tort in causing injury to another. I find that conceptual approach presents a complete non-sequitur which will be addressed after the properly defined issues are reviewed in conjunction with available precedent.

### III. COMBINING CLAIMS FOR INTENTIONAL TORT OF BATTERY WITH A NEGLIGENCE CLAIM FOR PHYSICAL INJURY

It is almost too obvious to require a statement that alternative theories of recovery can be pleaded under W.R.C.P. 8(e)(2), which states:

A party may set forth two (2) or more statements of a claim or defense alternately or hypothetically, either in one (1) count or defense or in separate counts or defenses. When two (2) or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both. All statements shall be made subject to the obligations set forth in Rule 11.

*See also Lane Co. v. Busch Development, Inc.*, 662 P.2d 419 (Wyo.1983). It should be equally obvious that action in self-defense can exceed reason and invade negligence. Likewise, what was an illegal battery can invoke negligent misconduct as an additional tortious offense against the victim. Whether done right or wrong, self-defense may be proper in a degree of resistance, but reach negligent assaultive conduct in the way it was carried out. The general course of action may be intentional, but the performance negligent in conduct.[3]

Since neither Strohman nor the majority cite authority rejecting alternative pleadings of the two theories as a matter of legal thesis in every case, the cases cited by Coleman provide support to the claim which is based on logic of the availability of both for a claimed right to recover damages. We then come to the second inquiry as emplaced in the facts of the case. Is there evidence upon which negligence as an issue of liability could state a claim in

---

**3.** Coleman cries in contention of violated due process in his appellate brief:

It is beyond dispute that prior to their confrontation, Appellee owed Appellant a duty. Appellee's duty was to defend himself only when justified and only by using reasonable force to protect his person. It is equally clear that a breach of that duty which proximately caused an injury to Appellant would sound in negligence. In the instant matter, the jury could have found that Appellee's instinctive reaction to whatever threat he believed Appellant posed, was not justified, was not reasonable, and was illustrated by the use of a degree of force clearly unreasonable under the

circumstances. His actions, according to the findings of the jury, were not intentional. However, the jury's consideration of Appellee's liability should not have ended at that point. It was clear, prejudicial, reversible error for the District Court to take from the jury Appellant's theory of negligence, which theory had been:
—properly pleaded;
—never challenged by motion by Appellee;
—never questioned by the District Court prior to or during trial;
—tested and found to have merit following Appellee's repeated Motions for Directed Verdict.

proof? Restated—if Coleman had filed suit within a strategy to retain a liability carrier in the case for Strohman to avoid an intentional conduct insurance policy exclusion by pleading only negligence, would Strohman still be entitled to a directed verdict under this actual evidence? *See Morris v. Farmers Ins. Exchange,* 771 P.2d 1206 (Wyo.1989).

Factually, the evidence is conflicting. We will accept Strohman's presentation that Coleman threatened first and Strohman resisted in self-defense by brushing aside the attack. Strohman then struck the bespectacled Coleman in the face with his fist.[4] Strohman tells us in testimony that it was "reflex." I can find clear propriety for the jury to have considered whether some reaction for the self-defense by Strohman was proper, but the "cold-cocked" blow as described by the police officer was unnecessary, negligent, tortious and consequently subject to damage award by the jury. We may have a very proficient pugilist who sought only an excuse to hit, hurt and injure. The jury should have decided.

We also need to address the ratio decidendi that the jury verdict on self defense is preclusive. Here, I find a problem with a determination that a theory of the case instruction was properly refused when the jury answered the only questions with which they were presented.

The jury verdict form which was used provided:

1. Did the defendant, Robert W. Strohman, commit a battery upon the plaintiff on August 6, 1988?

Yes _X_ No ___

If you have answered No. 1 "No", please sign the verdict form and notify the bailiff. If you have answered No. 1 "Yes", proceed to No. 2.

2. Do you find from the evidence that the defendant, Robert W. Strohman, acted in self-defense?

Yes _X_ No___

If you have answered No. 2 "Yes", please sign the verdict form and notify the bailiff. If you have answered No. 2 "No", proceed to No. 3.

3. What amount of money would fairly and reasonably compensate the plaintiff for his injuries proximately caused by the defendant?

$_____

4. Do you find that punitive damage should be assessed against the defendant?

Yes ___ No___

There is nothing in either "yes" decision of the verdict form or in the trial evidence which demonstrates that if a third question, which was in effect requested by Coleman, had been given that it would have been answered "no." That question would have been something in the nature of proposed Instruction 11 which was refused:

Even if you find that the Defendant acted in self-defense, you may still find him liable upon Plaintiff's claim for negligence if you find that his use of self-defense or his use of excessive force was

---

4. Strohman testified:

A. When Mr. Coleman was in my face, I started to ask him if there was a problem, why not let the police handle it, but I did not get my question out.

\* \* \* \* \* \*

Q. \* \* \* Now going back, you said you didn't get to finish your statement or question about why not letting the police handle this, what happened next in terms of your movement or his movement?

A. At that particular time when I was trying to ask a question, Mr. Coleman dropped his shoulder and shaking his hand, dropped his shoulder and started to swing. I blocked his swing with my left hand and hit him with my right hand.

Q. Okay, and you say that he dropped his hand and he dipped his shoulder, and, I think, you said also he was shaking his hands. You need to help me out and describe that for me a little better.

A. He dropped his shoulder and started to swing his hand, I blocked his punch and protected and hit him in self defense.

The testimony of Coleman was directly contrary in contention that he was brutally hit without warning. That the one punch winner had a hair-triggered proclivity to hit could hardly be denied on this evidence; self-defense or not.

mistaken. If the Defendant was not justified in his belief that he was in danger, or if he used excessive force to defend himself he is liable to Plaintiff for such negligent acts. In considering the issue of negligence you must also consider whether or not the Plaintiff was guilty of negligence which contributed to the events which led to his injuries.[5]

The reason to characterize the dispositive issue of the jury's finding of self-defense as a non-sequitur is because it relates in no way to whether the injury to Coleman was negligently inflicted. The jury had no choice to consider negligence which changed the case from consideration of the characteristic and damage in the conduct (negligence) to the temporal prior question of the reason for the conduct (self-defense).

There is nothing in this record that determines that self-defense was only to be served, even if appropriate, by a punch in the face. The jury verdict as phrased determined that Strohman properly reacted to conduct of Coleman and in no way did it determine that what was done in reaction was not in some regard improper, e.g., negligent. An interesting metamorphosis occurs within this appeal. The fistfight victor (one punch winner), Strohman, argues that the multitude of insurance coverage cases which address negligence as an insured liability activity for defense or payment do not apply. That conclusion is achieved without any explanation of why negligent conduct recovery under insurance company liability is somehow different than here where the same components of the individual's negligence in assault and battery were initially sought to be litigated by both parties. Why the negligence component of those insurance cases as a basis of liability is different from the included negligent liability contention of a straight civil lawsuit is not explained by any logical concept. *Alm v. Hartford Fire Ins. Co.*, 369 P.2d 216 (Wyo.1962).

The majority ignores the extended body of case law involving *Alm* and followed by *Morris*, 771 P.2d 1206, and applies preclusion by a halfway presented case. Under this approach, the insurance cases could never have developed because the incident of tort would only be considered under an intentional concept, e.g., excluded policy coverage. Logic and rational reasoning is misplaced or ignored. Obviously, negligence has to be considered to present a viable insurance coverage issue. The insurance case question is identical to the issue of contended and denied negligence.

To demonstrate that the posture adopted by the majority simply lacks foundation either in precedent or in legal philosophy, we review an array of cases where intentional tort versus negligence is considered and others where the similar principle of negligence in assault cases is derived from excessive force. For this jurisdiction, *Morris*, 771 P.2d 1206 is a normal and illustrative example of the body of the law. *Morris* considered the intentional tort/negligence issue within the context of whether an alcoholic condition extended beyond the capacity to form the intent to commit the intentional tort. Our discussion in the case was supported by a significant array of citations. Without intent, there cannot be an intentional tort; liability, if any, is based upon other theories, e.g., negligence. We said in *Morris*, 771 P.2d at 1214–15 (footnote omitted):

> Another problem is created by the intoxication factor as it relates to the capacity to form an intent necessary to meet the insurance policy intentional-injury exclusion. *Parkinson v. Farmers Ins. Co.*, 122 Ariz. 343, 594 P.2d 1039 (1979); *Transamerica Insurance Co. v. Thrift–Mart, Inc.*, 159 Ga.App. 874, 285 S.E.2d 566 (1981); *Badger Mutual Insurance Co. v. Murry*, 54 Ill.App.3d 459, 12 Ill.Dec. 672, 370 N.E.2d 295 (1977); *Burd v. Sussex Mutual Ins. Co.*, 56 N.J. 383, 267 A.2d 7 (1970); *Garden State*

**5.** As an abstract assessment of probabilities without the informed knowledge required by observation of the jury itself or an understanding of their attitudes and persuasions where, as here, voir dire is not reported, it would seem likely that the jury would have voted "yes" on the question and then awarded damages in something not significantly greater than a moderate amount.

*Fire & Casualty Co. v. Keefe,* 172 N.J.Super. 53, 410 A.2d 718, certification denied 84 N.J. 389, 420 A.2d 317 (1980); *United States Fidelity & Guaranty Ins. Co. v. Brannan,* 22 Wash.App. 341, 589 P.2d 817 (1979); *Kenna v. Griffin,* 4 Wash.App. 363, 481 P.2d 450 (1971). Thus, the issue of whether Morris was too drunk to form the requisite intent is a material issue. This inquiry was specifically addressed by the Georgia Supreme Court in a very similar circumstance in reversal of summary judgment received by the homeowner's insurance carrier after a shooting death where the court considered whether intoxication may render a person incapable of forming an intent or expectation of injuring another.

> "The question of intent or expectation here uniquely fits the pattern of those issues of material fact which are not appropriate issues for summary judgment but are decided by the trier of fact."

*State Farm Fire & Cas. Co. v. Morgan,* 258 Ga. 276, 368 S.E.2d 509, 510 (1988). See Note, *The Intentional Injury Exclusion: When is There No Intent Behind the Intention?,* 11:3 Am.J.Trial Advoc. 527 (1988).

The multitude of cases addressing this issue of the visible distinction between intentional assault tort and negligent injury contentions within the insurance law subject of policy exclusion is illustrated by 227 pages in Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957 (1984).[6] *See also* Annotation, *Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured,* 2 A.L.R.3d 1238 (1965 & 1991 Supp.).[7]

Illustrative of these cases in recognized differentiated concepts between the intentional tort and negligent action is *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 113, 419 P.2d 168, 177 (1966), where Justice Tobriner recognized:

> Further, [tort claim defendant] might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct. Thus, even accepting the insurer's premise that it had no obligation to defend actions seeking damages not within the indemnification coverage, we find, upon proper measurement of the third party action against the insurer's liability to indemnify, it should have defended because the loss could have fallen within that liability.

*Id.* 450 N.E.2d at 193. Obviously, this is the direct opposite of what was addressed here where the negligent action recovery theory was directly presented in pleading and evidence and then denied by the trial court through directed verdict instruction preclusion.

6. The annotated case, *Terrio v. McDonough,* 16 Mass.App. 163, 450 N.E.2d 190 (1983), provides an interesting statement and footnote:

   In response to an inquiry by the judge whether Terrio waived her right to amend her complaint *to* include a claim for injuries resulting from a negligent act of McDonough, in addition to the claim based on his deliberate act, Terrio's counsel said she *did* waive that right. Her position was resolute that the fall was not accidental, but the result of a purposeful push. Responding to a further question, Terrio's counsel said that so far as she knew the plaintiff was not going to adduce any evidence which would warrant recovery on a negligence theory.
   2. Terrio kept an anchor to windward. Asked by the judge if she waived the right to recover on a finding of a negligent, rather than an intentional act, she answered that she did not waive such a right and would accept an award based on negligence. No negligence question was ever put to the jury.

7. Representative cases include *Hartford Fire Ins. Co. v. Blakeney,* 340 So.2d 754 (Ala.1976); *Mullen v. Glens Falls Ins. Co.,* 73 Cal.App.3d 163, 140 Cal.Rptr. 605 (1977); *Breland v. Schilling,* 550 So.2d 609 (La.1989); *Hawkeye Sec. Ins. Co. v. Shields,* 31 Mich.App. 649, 187 N.W.2d 894 (1971); *Farmers Ins. Exchange v. Sipple,* 255 N.W.2d 373 (Minn.1977) (reflex action *to* an anticipated assault); and *State Farm Fire & Casualty Company v. Muth,* 190 Neb. 248, 207 N.W.2d 364 (1973). The intentional shooting case of *City of Louisville v. Yeager,* 489 S.W.2d 819 (Ky.1973) is not inapposite to these citations and the well-defined thesis developed to differentiate between negligent conduct and the intentional assaultive tort.

The purpose required to establish the intent assault tort was considered in *State Farm Fire & Casualty Company v. Muth*, 190 Neb. 248, 207 N.W.2d 364 (1973), where the concept questioned whether the bodily injury was expected or intended for coverage exclusion compared to non-intended result for which coverage existed. The court found that a non-intended result did not produce an intentional tort.

The symmetry in concept between intentional tort and negligent conduct was considered by a federal court in *Allstate Ins. Co. v. Steinemer*, 723 F.2d 873, 875 (11th Cir.1984) (footnote omitted):

Under the majority rule the exclusion applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from that intended. *See Hartford Fire Insurance Co. v. Spreen*, 343 So.2d 649 (Fla. 3d Dist.Ct. App.1977) (no insurance coverage for man who intentionally struck another man in face with fist, causing severe injury, but intending only to do minor harm). On the other hand, an "intentional injury" exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence. *Id* at 651; *see, e.g., Phoenix Insurance Co. v. Helton*, 298 So.2d 177 (Fla. 1st Dist.Ct.App.1974) (insurance exclusion does not apply where man injured member of crowd as he drove car slowly into crowd thinking crowd would disperse).

*Steinemer* considered intention where two young men were involved with a BB gun. The firing of the gun was intended; the resulting eye injury (or any injury for that matter) was completely undesired and unexpected. Consequently, because the tort was unintentional, the policy exclusion would not apply and coverage was left in place for concepts of determined negligently committed injury.

The basic principle supporting Coleman's negligence theory of the case has an ancient history, long pre-dating the multiplicity of current insurance coverage adaptations which only continue that historical perspective. One of the earliest of quiescent concept and pithy phraseology is *Elliott v. Brown*, II Wend. 497, 500 (N.Y.1829):

It was held in [*Cockcroft v. Smith*, (*Salk.* 642)] a good defence. But the principle is laid down by the court, though they say contrary to common practice, that for a small assault there must not be an unequal return; but the question should be, what was necessary for a man's defence; not who struck first. * * *

The same principle was recognized in South Carolina, in the case of *The State v. Wood*, (1 *Bay*, 351.) The defendant was indicted for an assault and battery on a woman. He proved that she struck him first with a cowskin, whereupon he gave her several severe blows with a large stick and left her speechless on the ground. The court directed a verdict against the defendant. They agreed that the general rule of law is, that it is a justification to the defendant that the prosecutor or plaintiff gives the first blow; but the resistance ought to be in proportion to the injury offered. Where a man disarms the aggressor, or puts it out of his power to do further injury, he ought to desist from further violence; and if he commits any further outrage, he becomes the aggressor. The case in *Salk.* 642, is cited as sound law. So the master of a vessel has a right to use proper chastisement for disobedience of orders; but if it be excessive, and out of proportion to the offence, he becomes a trespasser. (15 *Mass.R.* 347, 365.) And so in all cases where the right of chastisement is given by law, if unnecessary severity is used, an action or an indictment lies. The plaintiff in this case had no greater rights than those who are permitted by law to chastise others under their control. Admitting that the defendant gave the first blow, this authorized the plaintiff to resist force by force, and to disarm or disable his adversary; but it did not authorize an athletic, gigantic man to crush almost to death a

little, feeble old man. There can be no manner of doubt, then, that had Elliott sued Brown, he would have been entitled to recover exemplary damages; and from former decisions, should this recovery be sustained, it is a bar to any action which Elliott may bring. Can the law tolerate such injustice? How can the plaintiff be in any better situation in the eye of the law and of reason by being plaintiff, than he would be in were he the defendant? If the law is as stated in the court below, any person who is assaulted ever so slightly, and that too upon his own provocation, may turn upon his assailant and beat him as much as he pleases without killing him, and yet recover damages from the man whom he has thus abused. The law is not chargeable with such injustice. It is true that both parties may be guilty of a breach of the peace, and may be liable to punishment by indictment at the suit of the people, whose laws they have both offended; but a civil action cannot surely be sustained by each of them against the other.

Similar well-defined precedent in the older case law is found in *The Philadelphia, Wilmington & Baltimore R.R. Co. v. Larkin,* 47 Md. 155 (1877). The court considered expulsion of the plaintiff "with *unnecessary and reckless violence and indignity,*" *id.* at 163 (emphasis in original), after a dispute had developed about the passenger's failure to immediately produce his ticket. Even if plaintiff had acted with fault, the court found the railroad's responsive conduct justified not only the verdict which was affirmed but also punitive damages.

The Indiana court in *Adams v. Waggoner,* 33 Ind. 531, 533 (1870) took us to *Exodus* 21:18, 19 in otherwise concluding:

If the appellant had been entirely without fault when the appellee attacked him, but in defending himself had used an excess of force, a suit for damages could have been maintained by the appellee for the excess, although he was the first in the wrong; and can it be said or held that, as to his right to recover damages for the cutting he received, he is placed in a worse situation by an agreement to

fight than he would have been upon an unprovoked assault upon an innocent man?

In *Powell v. Meiers,* 54 N.D. 336, 209 N.W. 547, 548 (1926), the lady of the residence was "[r]oused to anger, * * * by the epithets heaped on her by the defendant, plaintiff struck him in the face with a hand towel, approximately 14 inches by 36 inches, which she had in her hand when she came out of the kitchen in response to their call." The court then stated:

The testimony is clearly sufficient to support a verdict by the jury that the defendant used more force than was necessary to defend himself against the attack made upon him by the plaintiff. We are not impressed that defendant, Meiers, was in such grave danger of personal harm at the hands of Mrs. Powell that he was justified in hitting and kicking her with the force disclosed by the record, or at all. A hand towel can scarcely be considered a dangerous weapon, and there is nothing to suggest that the defendant was a man of such timidity that the flourishing of a towel by a lady should fill him with alarm. If he did experience "more pangs and fears than wars or women have," the record does not suggest it.

*Id.* 209 N.W. at 549.

Similarly stated in *Fraguglia v. Sala,* 17 Cal.App.2d 738, 62 P.2d 783, 786–87 (1936) (quoting 4 Am.Jur., 153), the California court stated:

"One who, in acting in self-defense, uses force in excess of that which he is privileged to use, is liable for so much of the force used as is excessive, and the other person has the normal privilege of defending himself against the use or attempted use of excessive force. In other words, to the extent that excessive violence and unnecessary force is used in repelling an assault, one becomes liable as trespasser and subject to an action for assault and battery. In determining whether the particular means used is or is not excessive, the amount of force exerted, the means or instrument by

which it is applied, the manner or method of applying it, and the circumstances under which it is applied are factors to be considered."

*See also* 6 Am.Jur.2d *Assault and Battery* § 162 (1963) for a summary of the law regarding excess force in repelling an attack which can create civil liability. Additional cases involving excessive force self-defense liability include *Bethley v. Cochrane*, 77 So.2d 228 (La.App.1955); *Reber v. Sandoz*, 63 So.2d 876 (La.App.1953); and *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.), cert. denied 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975) (following *Meiers* and quoting 6 Am.Jur.2d, *supra*, §§ 161, 162 and 163).

Discussion in a case establishing the interplay between the insurance coverage exclusion and negligence and intentional conduct is found in *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981), where the defendant claimed self-defense in hitting the plaintiff in the face resulting in injury and related litigation. In requiring defense by the insurance carrier until facts of occurrence could be determined, the court said, in addition to a defendant's verdict on liability, that there could be "a finding that while the act may be unlawful it was negligent and not intentional, thereby bringing the act within the coverage of the policy." *Id.* 313 N.W.2d at 640. *Accord Hanover Ins. Group v. Cameron*, 122 N.J.Super. 51, 298 A.2d 715 (1973).

The intent to injure differentiation between a negligent offense and an intentional offense in the insurance exclusion cases has continued relevance here.

Examination of self-defense as a concept of tort law is helpful in determining how to interpret an insurance policy which indemnifies against tort damages and contains an exclusionary clause for injuries "expected or intended" by the insured. In discussing the evolution of the concept of fault in tort law, Prosser offers some important historical insights.

"Originally the man who hurt another by pure accident, or in self-defense, was required to make good the damage inflicted. 'In all civil acts,' it was said, 'the law doth not so much regard the intent of the actor, as the loss and damage of the party suffering.' There was ... a rule, undoubtedly supported by the general feeling in the community, that 'he who breaks must pay.' "

Prosser, *Handbook on the Law of Torts* § 75 at 492 (4th ed. 1971) (footnotes omitted). As social policy and community sentiment, much of this may still be true today, but modern tort law does seek to characterize the behavior of the actor as either blameworthy or morally faultless. In tort law, therefore, there is usually a need to distinguish between negligence and intent. This is a matter of "line drawing."

" * * * [T]he distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a substantial certainty."

Prosser, *supra*, § 8 at 32 (emphasis supplied) * * *.

*Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 694 P.2d 181, 186–87 (1984). For a case extending reasonable self-defense where excessive force was not found by the fact finder to have been used, see *Travis v. Hall*, 431 N.E.2d 519 (Ind.App.1982).

## IV. WYOMING CASE LAW

What is surprising within this entire discussion is that Wyoming has a case which is completely consistent with the entirety of the case law cited in this dissent and completely unnoticed in appellee's brief and the majority opinion. In *Alm*, 369 P.2d 216, plaintiff-insured was sued in a complaint which stated two causes of action, negligence and intentional assault. In reversing summary judgment granted to the insurance carrier, we stated:

If the petitioner in the injury case felt she might recover, even though her alleged injury was only the result of the insured's negligence, she was entitled to so plead. If she felt she could get a better recovery by pleading her injury

was intentionally inflicted, she also had that right. The question of the insured's insurance coverage would not have affected the manner in which she voiced her minimum and maximum claim in different counts. * * *

* * * * * *

From what has been said, we must conclude the summary judgment of the district court was in error in that it failed to recognize that under the allegations of simple negligence contained in the first count of the injury action, the insured could have suffered liability from which he was entitled to be defended and indemnified by the company. The summary judgment of the district court is reversed and the case remanded with direction to enter summary judgment in favor of the insured on the sole issue of the company's liability and to proceed with the trial of the issue of the amount of damages.

*Id.* at 219–20.

In comparable analysis of theory of a claim, we find an alternative concept in *Condict v. Hewitt,* 369 P.2d 278, 279 (Wyo. 1962) (emphasis added):

The evidence as a whole was amply sufficient to have justified a conclusion on the part of the trial court that Condict either acted as an aggressor or *used more force than was necessary for self-defense.*

The judgment for plaintiff rendered by the trial court was modified and affirmed on appeal.

The authority used for decision by the majority, *Tatman v. Cordingly,* 672 P.2d 1286 (Wyo.1983), fails factually to support the argument presented and in fact is consistent with *Morris, Condict, Alm,* Annotation, *supra,* 31 A.L.R.4th 957, and the negligent assault cases which I have recited in detail. In *Tatman,* no claim on a negligence theory was made and that issue was not presented since only the intentional assault offense was litigated into a resulting defendant's verdict. However, even *Tatman* recognized that self-defense provided only a limit in privilege beyond which conduct can extend to create liability.

The majority misses the entire perspective by utilizing the precedent of a case that did not raise negligence claim issues for any authority justifying this decision. The verdict employed in *Tatman* demonstrates why in a dual faceted case, such as we have here, additional provisions are required to properly address the entire thesis presented by the litigant for court resolution. Here, we have failure to instruct on the theory of the case—not sufficiency of the evidence to sustain a verdict on a unitary theory of intentional assault, e.g., intended injury.

In research of other Wyoming cases, no inconsistency between *Alm, Morris* and *Tatman* can be developed. In *Petsch v. Florom,* 538 P.2d 1011 (Wyo.1975), we have the assault victim's successful verdict which was affirmed on the intentional assault complaint. *See also Jelly v. Dabney,* 581 P.2d 622 (Wyo.1978); *Glover v. Berger,* 72 Wyo. 221, 263 P.2d 498 (1953) (unprovoked assault with a deadly weapon); *Mahoney v. Pearce,* 38 Wyo. 151, 265 P. 446 (1928) (assault with fists); *Wilson v. Hall,* 34 Wyo. 465, 244 P. 1002 (1926) (aggravated battery with fists and kicking); *Hanson v. Shelburne,* 23 Wyo. 445, 153 P. 899 (1915) (assault with a cane); *Williams v. Campbell,* 22 Wyo. 1, 133 P. 1071 (1913) (hand assault in argument over a horse); and *Yount v. Strickland,* 17 Wyo. 526, 101 P. 942 (1909) (fight over ditch with excessive force in repelling assault by chewing on finger).

It can be concluded from a review of all of the Wyoming cases that there is no authority presented to justify forcing the litigant to try his case on only one of two available theories for recovery. Consequently, we create an anomaly which has support in neither our historical precedent nor the general common law of other jurisdictions.

## V. CONCLUSION

I do not ignore the majority's reliance on the text of the self-defense instruction and in particular the reasonably-prudent-person/no-more-force criteria. Where no

choice is given to the jury, the jury cannot and will not exercise choice. The fact of the matter is that the entire expanse of a negligence component in the assault and battery injury litigation was removed here by directed verdict.

I return to where I started in dissent in strong concern about the failure to give a theory of the case instruction where supported by any evidence and stating a viable claim or defense. Here particularly, where both litigants postured the issues for jury decision on that dual basis, the trial court should not have effectively rendered the verdict against Coleman by preventing consideration of each of the claims he presented for jury determination.

I would reverse and remand for retrial on the basis of a negligent assault theory of recovery in accord with the pleadings and trial evidence previously submitted which was then denied by the trial court's directed verdict foreclosing jury review.

